185 P.3d 200

**STATE of Hawai'i, Petitioner/Plaintiff–Appellee**

v.

**Eric K. SHANNON, Respondent/Defendant–Appellant.**

**No. 27919.**

Supreme Court of Hawai'i.

May 29, 2008.

Anne K. Clarkin, Deputy Prosecuting Attorney, City and County of Honolulu, on the application and brief, for petitioner/plaintiff-appellee.

Hayden Aluli, on the brief, Honolulu, for respondent/defendant-appellant.

MOON, C.J., LEVINSON, ACOBA, and DUFFY, JJ.; and NAKAYAMA, J., Dissenting.

Opinion of the Court by ACOBA, J.

Petitioner/Plaintiff–Appellee State of Hawai'i (Petitioner) seeks review of the October 17, 2007 Judgment of the Intermediate Court of Appeals (ICA),[1] entered pursuant to its

---

**1.** Pursuant to Hawai'i Revised Statutes (HRS) § 602–59 (Supp.2007), a party may appeal the

decision of the ICA. *See* HRS § 602–59(a). In determining whether to accept or reject the ap-

published opinion [2] filed on September 28, 2007, *see State v. Shannon,* 116 Hawai'i 38, 169 P.3d 990 (App.2007), vacating the April 6, 2006 Judgment of the District Court of the First Circuit, Kaneohe Division (the court) [3] revoking the Deferred Acceptance of Guilty Plea (DAGP) granted to Respondent/Defendant–Appellant Eric K. Shannon (Respondent) and convicting him of criminal trespass in the second degree, in violation of HRS § 706–814(a)(1) (1993).[4]

We hold that (1) under HRS § 853–1 (1993 & Supp.2007),[5] referring to a DAGP, and incorporating HRS § 706–624 (1993 & Supp. 2007),[6] pertaining to probation, the defendant must be given a written copy of the conditions imposed pursuant to his or her DAGP, (2) an "actual notice" rule such as that applied by federal courts cannot be validly substituted for the written notice required by our statutes, (3) Respondent was not given a written copy of his conditions, and, therefore, under *State v. Lee,* 10 Haw.App. 192, 862 P.2d 295 (1993), his DAGP could not be revoked by the court, (4) further, consistent with the written conditions requirement and HRS § 853–3 (1993) as it is construed with HRS § 706–627(1) (1993), a motion to revoke a DAGP for failure to comply with its conditions must be in writing, (5) Petitioner did not file a written motion to revoke Respondent's DAGP, therefore, (a) Respondents's period of deferral was not tolled, and (b) the deferral period expired before the court ruled on the motion to revoke. Accordingly,

Respondent's DAGP could not be revoked and Petitioner's motion to revoke must be dismissed with prejudice. Ultimately, then, the ICA did not gravely err in vacating the court's judgment. *See Shannon,* 116 Hawai'i at 39, 169 P.3d at 991.

## I.

The following matters adduced are from the record and the submissions of the parties. On February 11, 2005, Petitioner charged Respondent with criminal trespass in the second degree via amended complaint,[7] according to Petitioner. Respondent entered a guilty plea and orally moved for DAGP. The court granted Respondent's motion for DAGP and deferred Respondent's plea for one year, provided that Respondent "[ (1) ] remain arrest and conviction free for that period, [ (2) ] ... complete forty hours of community service, and [ (3) ] ... pay a 'CICF' [8] fee of twenty-five dollars." Respondent's Proof of Compliance hearing was set for January 27, 2006.

At the January 27, 2006 proof of compliance hearing, Petitioner orally moved to have Respondent's DAGP revoked, and the court continued the hearing to March 26, 2006. On March 24, 2006, the court again continued the hearing, until April 6, 2006.

At the April 6, 2006 hearing, Respondent made several motions related to the DAGP. First, Respondent moved to have his forty hours of community service converted to a

---

plication for writ of certiorari, this court reviews the ICA decision for:

  (1) Grave errors of law or of fact; or

  (2) Obvious inconsistencies in the decision of the [ICA] with that of the supreme court, federal decisions, or its own decision,

and the magnitude of such errors or inconsistencies dictating the need for further appeal. HRS § 602–59(b). The grant or denial of a petition for certiorari is discretionary with this court. *See* HRS § 602–59(a).

2.  The opinion of the ICA was authored by Presiding Judge Daniel R. Foley, who was joined by Associate Judge Alexa D.M. Fujise. Associate Judge Craig H. Nakamura filed a dissenting opinion. As used herein, "ICA" refers to the majority opinion and the "ICA dissent" refers to Judge Nakamura's separate dissenting opinion.

3.  The Honorable T. David Woo, Jr. presided.

4.  HRS § 706–814(a)(1) provides in pertinent part that "[a] person commits the offense of criminal trespass in the second degree if ... [t]he person knowingly enters or remains unlawfully in or upon premises that are enclosed in a manner designed to exclude intruders or are fenced[.]"

5.  *See infra* note 18.

6.  *See infra* notes 19 & 20.

7.  It appears that if there were a written complaint, it was not made a part of the record on appeal. However, the calendar from the court indicates that on February 11, 2005, Petitioner was "orally charged." (Capitalization altered.)

8.  "CICF" is not defined by the parties or by the record.

fine.[9]  The court denied the motion.  Next, Respondent requested another continuance "so that he could obtain a transcript of [his] change-of-plea hearing" because defense counsel believed there might be grounds to vacate his plea.  The court denied that motion without prejudice, noting that "it [has] taken over a year for that motion to [be] file[d,]" and its "general practice" of allowing the withdrawal of DAGPs only "relucant[ly]."

Having disposed of Respondent's motions, the court considered Petitioner's motion to revoke Respondent's DAGP. Petitioner introduced a probation report indicating that Respondent had been arrested on August 12, 2005.[10]  Respondent objected to the introduction of the probation report on the grounds that it was inadmissible hearsay and because it violated Respondent's right to "confront[ ] . . . whatever evidence is going to be adduced against him. . . ."  Ultimately, the court took judicial notice that Respondent had been arrested subsequent to entering his DAGP.

> As to revocation of the DAGP, Respondent argued that [the court] lacked jurisdiction to set aside the DAG[P] because the deferral period had already expired.  In other words, *the prosecutor's oral motion to set aside the DAG[P] did not toll the deferral period as a matter of law because [Petitioner] did not file a motion as required pursuant to [HRS] § 706–626 [sic, presumably HRS § 706–627[11]].*

(Emphasis added.)  Alternatively, relying on *Lee,* Respondent argued that his DAGP could not be revoked for failure to comply with conditions because Petitioner had not "show[n] proof that [Respondent] had received written notification" of those condi-

tions.  Finally, Respondent argued that the condition that he remain "arrest and conviction free" during the deferral period was improper because "[t]here is no condition . . . under [HRS § ]706–624 that permits any type of prohibition to be arrest free."

Ultimately, the court revoked Respondent's DAGP,

> [b]ased on the report from the probation office, based on the [c]ourt's judicial notice that certain charges have been filed against [Respondent], . . . and the [c]ourt's finding that of the [forty] hours of community service that [Respondent] was ordered to . . . complete, [Respondent] has not completed any of those hours of community service.

Thus, the court accepted Respondent's guilty plea, adjudged him guilty and imposed fines totaling $225.

## II.

On appeal to the ICA, Respondent alleged that "[the court] committed reversible error" (1) in finding "that the period of deferral had been tolled by [Petitioner's] oral motion on January 27, 2006, to set aside [Respondent's] DAG[P]," (2) in "reviewing a hearsay probation report without making a finding that the probation officer was unavailable to testify in violation of the due process and the confrontation clauses[,]" (3) in "set[ting] aside the DAG[P] without any evidence that [Respondent] had signed in writing the conditions of the deferral[,]" (4) because the court "lacked statutory authority to impose a DAG[P] condition that [Respondent] remain arrest free[,]" (5) in "refus[ing] to convert [Respon-

---

9. Respondent attended a "screening/placement interview" related to his community service requirement, but failed to report to his assigned location.  As of December 9, 2005, the Adult/Juvenile Community Service and Restitution Unit reported to the court that Respondent's community service obligation remained outstanding.

10. According to Petitioner, Respondent faced "two charges of Temporary Restraining Order[and] a charge of Theft in the Fourth Degree."

11. HRS § 706–627(1) provides that

*[u]pon the filing of a motion to revoke a probation . . . the period of probation shall be tolled*

pending the hearing upon the motion and the decision of the court.  *The period of tolling shall be computed from the filing date of the motion through and including the filing date of the written decision of the court* concerning the motion for purposes of computation of the remaining period of probation, if any.  *In the event the court fails to file a written decision upon the motion, the period shall be computed by reference to the date the court makes a decision upon the motion in open court.*  During the period of tolling of the probation, the defendant shall remain subject to all terms and conditions of the probation except as otherwise provided by this chapter.
(Emphases added.)

dent's] community service to a fine[,]" and (6) in "den[ying Respondent's] motion to continue the matter to permit him to obtain a transcript of the change-of-plea hearing in order to determine whether grounds exist, in addition to a native tenant rights defense, to vacate" the DAGP.

### III.

The ICA found Respondent's third issue on appeal to be dispositive and held that the court "erred in setting aside [Respondent's] DAG[P] because [Respondent] did not receive a written copy of the conditions of his DAG[P]." *Shannon,* 116 Hawai'i at 39, 169 P.3d at 991 (boldfaced font omitted). The ICA stated that HRS § 853–1(b) (Supp. 2007) [12] "incorporates and permits courts accepting DAG[Ps] to impose any conditions enumerated in HRS § 706–624." *Id.* at 40, 169 P.3d at 992 (citing *State v. Kaufman,* 92 Hawai'i 322, 329, 991 P.2d 832, 839 (2000); *State v. Dannenberg,* 74 Haw. 75, 82, 837 P.2d 776, 779 (1992)).

The ICA rejected Petitioner's argument that Respondent's "receipt of actual, oral notice [of the conditions of his DAGP] at the February 11, 2005 hearing was sufficient." *Id.* The ICA reasoned that Petitioner's position was incorrect under *Lee.* It explained that the legislative intent underlying HRS § 706–624 precluded reliance on actual notice in lieu of written notice of conditions. It declared that

> [t]he intent of HRS § 706–624 is to provide the defendant with notice of what is expected of him in a form which will not escape his memory.
>
> . . . .
>
> The requirement of HRS § 706–624(3) that a defendant be provided with a written statement of the conditions of his probation also provides assurance that a defendant will know the exact terms and conditions of his probation before his probation can be revoked for failure to comply with the terms and conditions.

*Id.* (quoting *Lee,* 10 Haw.App. at 198, 862 P.2d at 298) (ellipsis points in original). Al-

though the ICA acknowledged that the court's calendar indicated that on February 11, 2005, the court orally advised Respondent of the conditions of his DAGP, it was observed that "there is no evidence in the record that [Respondent] received a written copy of his conditions. [Respondent] contends that he did not receive a written copy, and [Petitioner] does not contend otherwise." *Id.* Accordingly, the ICA vacated the court's April 6, 2006 decision to revoke Respondent's DAGP and "remanded for further proceedings consistent with this opinion." *Id.*

### IV.

In its application for certiorari, Petitioner presents a single question, "whether the ICA gravely erred in vacating the trial court's decision to set aside [Respondent's] DAG[P], notwithstanding his actual notice of the terms and conditions thereof."

### V.

██ The revocation of a DAGP is reviewed for an abuse of discretion. *See Kaufman,* 92 Hawai'i at 326–27, 991 P.2d at 836–37 (stating that, like "[t]he grant or denial of a DAG[P]," the "setting aside, or revoking a DAG[P] is properly within the discretion of the trial court. Generally, to constitute an abuse, it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of the party litigant.") Similarly, sentencing decisions are also reviewed under the abuse of discretion standard. *See State v. Davia,* 87 Hawai'i 249, 253, 953 P.2d 1347, 1351–52 (1998) ("The authority of a trial court to select and determine the severity of a penalty is normally undisturbed on review in the absence of an apparent abuse of discretion or unless applicable statutory or constitutional commands have not been observed.")

### VI.

Petitioner points to the ICA's reliance on the policy concerns expressed in *Lee,* namely, that written notification of conditions ensures

---

12. HRS § 853–1(b) provides in pertinent part that "[t]he proceedings may be deferred upon

any of the conditions specified by section 706–624."

that probationers are aware of the conditions with which they must comply. In that connection, Petitioner argues that "Respondent did not contend that he was unaware of the terms and conditions of his DAG[P]." Petitioner reiterates the ICA dissent's argument that "[i]n *United State's [sic] v. Arbizu*, 431 F.3d 469 (5th Cir.2005), the United States Court of Appeals for the Fifth Circuit noted that every other circuit court to address this issue had held that the government's failure to provide the notice required by the [18 U.S.C. §§ 3583(f) and 3603(1) ] does not limit the [trial] court's authority to revoke supervised release where the defendant had actual notice of the release terms." (Citing *Shannon*, 116 Hawai'i at 41–42, 169 P.3d at 993–94 (Nakamura, J., dissenting).) (Internal quotation marks omitted.) (Third brackets in original.) [13]

Petitioner further argues that the court's calendar "reflects that Respondent was apprised of the terms of his deferral" and that Respondent's knowledge of those terms was proven by the facts that (1) Respondent paid the CICF fine on March 14, 2005, and (2) Respondent twice requested to have his community service requirement converted to a fine. Based on that, Petitioner argues that "Respondent . . . was aware of the terms and conditions of his deferral, and just as evidently cognizant that he had failed to fulfill them."

## VII.

The legislature adopted HRS chapter 853, entitled "Criminal Procedure: Deferred Acceptance of Guilty Plea, Nolo Contendere Plea," because it determined that certain offenders should be provided the opportunity to be conviction free consistent with the government's penal goals. The legislature explained that

> "in certain criminal cases, particularly those involving first time, accidental, or situational offenders, it is in the best interest of the [prosecution] and the defendant that the defendant be given the opportunity to keep his [or her] record free of a criminal conviction, if he [or she] can comply with certain terms and conditions during a period designated by court order."

*State v. Putnam*, 93 Hawai'i 362, 367–68, 3 P.3d 1239, 1244–45 (2000) (quoting 1976 Haw. Sess. L. Act 154, § 2 at 279) (emphasis omitted) (brackets in original). Thus, in appropriate cases, the court may suspend the proceedings for a set period of time provided that the defendant complies with certain conditions imposed by the court. *See* HRS § 853-1(c) (1993) ("Upon the defendant's completion of the period designated by the court and in compliance with the terms and conditions established, the court shall discharge the defendant and dismiss the charge against the defendant.") Such conditions are imported from HRS § 706-624 relating to conditions of probation. In that regard, the DAGP statute provides, in pertinent part, that

> *[t]he proceedings may be deferred upon any of the conditions specified by section 706-624.* . . . The court may defer the proceedings for such period of time as the court shall direct but in no case to exceed the maximum sentence allowable; provided that, if the defendant has entered a plea of guilty or nolo contendere to a petty misdemeanor, which case the court may defer the proceedings for a period not to exceed one year. . . .

13. Petitioner notes that other federal cases espoused similar rules. (Citing *United States v. Ortega–Brito*, 311 F.3d 1136, 1138 (9th Cir.2002) (agreeing with the First and Eighth Circuits that "a failure to provide written notice of . . . conditions [of supervised release] will not automatically invalidate the revocation of [defendant's] release based upon a violation of such conditions")); *United States v. Felix*, 994 F.2d 550, 551 (8th Cir.1993) (holding that "the failure to order or to provide a written statement" of conditions of supervised release be furnished to the defendant does not "automatically result[ ] in the inability of a sentencing court to revoke supervised release based on a violation of one of the conditions" (citations omitted)); *cf. United States v. Tapia–Marquez*, 361 F.3d 535, 538 (9th Cir. 2004) (explaining that the rule in *Ortega–Brito* "would have compelled affirmance of the judgment [revoking defendant's supervised release] if [his] release from custody had not rendered his appeal moot"). Although Petitioner acknowledges that this court is free to give greater constitutional protection under the Hawai'i Constitution than what is afforded under the federal constitution, it argues that in this case, "logic and sound regard for such protection is not warranted. . . ."

HRS § 853–1(b) (emphasis added). HRS § 853–1(c)–(e) (1993) further state that once the period of "probation" has terminated, if the defendant has complied with the terms and conditions, the charges shall be dismissed without an adjudication of guilt or conviction and the defendant may thereafter apply to have his or her record expunged. *See also State v. Kealaiki*, 95 Hawai'i 309, 312, 22 P.3d 588, 591 (2001) (noting that "there is no conviction when the acceptance of . . . a plea is deferred" (internal quotation marks and other citation omitted)); *Putnam*, 93 Hawai'i at 368, 3 P.3d at 1245 (noting that "[t]he effect of a [DAGP] was . . . to enable a defendant to retain a record free of a criminal conviction by deferring a guilty plea for a designated period and imposing special conditions which the defendant was to successfully complete" (citation and internal quotation marks omitted)).

To the extent that a defendant who has entered a DAGP remains at liberty, subject to certain conditions on his or her behavior, the deferral period is similar to probation. The Commentary on HRS § 706–624(3), relating to written conditions of probation, explains that "[p]robation attempts to correct the defendant without interrupting the defendant's contact with open society." As with probation, DAGPs are afforded to those defendants who meet certain criteria. *See* HRS § 853–1 (providing that a defendant may be granted a DAGP when (1) the "defendant voluntarily pleads guilty or nolo contendere," (2) the court believes it is unlikely that the defendant will "engage in a criminal course of conduct" in the future, and (3) the interests of "justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law").[14] The circumstances mitigating in favor of a DAGP are similar to the considerations evaluated by a court when determining whether probation is appropriate. *See* HRS § 706–621 (listing ten specific factors to

be weighed by the court in deciding whether probation should be granted).

Conversely, if the defendant does not successfully complete his or her deferral period in compliance with the terms and conditions imposed by the court, "the court may enter an adjudication of guilt and proceed as otherwise provided." HRS § 853–3; *see also Kaufman*, 92 Hawai'i at 330, 991 P.2d at 840 (holding that "the circuit court did not abuse its discretion in setting aside [defendant's] DAG[P], accepting his guilty plea, and convicting and sentencing him accordingly" where the defendant was convicted of other crimes during his deferral period in violation of the conditions of his DAGP). Similarly, a court is required to "revoke probation if the defendant has inexcusably failed to comply with a substantial requirement imposed as a condition . . . or has been convicted of a felony." HRS § 706–625(3) (Supp.2007).

## VIII.

■ This court has previously acknowledged the substantial similarity between the DAGP and probation statutes. *See Kaufman*, 92 Hawai'i at 328, 991 P.2d at 838 (holding that "it is clear that *the DAG[P] deferral period is closely analogous to a 'probationary period'*" (emphasis added)). In *Kaufman*, the sentencing court set aside the defendant's DAGP, accepted his guilty plea, and sentenced him accordingly. *Id.* at 325–26, 991 P.2d at 835–36. Kaufman appealed, arguing, *inter alia*, that the court "lacked jurisdiction to set aside [his] DAG[P] after the deferral period had expired[.]" *Id.* at 323, 991 P.2d at 833. The ICA affirmed, and this court accepted certiorari in order to "clarify that a motion to set aside a DAG[P] tolls the period of deferral pending the decision of the court on the motion." *Id.*

In reaching that conclusion, this court conceded that "[t]he legislature has not enacted a tolling provision specifically applicable to DAG[P] deferral periods." *Id.* at 328, 991

14. Accordingly, the DAGP statutory scheme does not list independent conditions with which the defendant must comply. HRS § 853–4 (1993 & Supp.2007), entitled "Chapter not applicable; when[,]" lists circumstances related to the nature of the offense, the attributes or history of the defendant, and the nature of the victim, none of which are applicable to the instant case. Such considerations are akin to factors relating to consideration for probation listed in HRS § 706–621 (1993).

P.2d at 838. Nevertheless, based on the express language of the statute and the legislative intent, this court concluded that the deferral period of a DAGP is "closely analogous" to a period of probation. *Id.* This court related that the statute " 'deferred [proceedings] upon any of the conditions specified in section 706–624,' entitled 'Conditions of Probation.' " *Id.* (quoting HRS § 853–1 (1976 & Supp.1984)). This court also considered the legislative history of HRS chapter 853, which referred to the deferral period as a "probationary period." *Id.* (announcing that "[t]his sentencing alternative [ (referring to deferred pleas) ] is employed in those cases where the interests of both the public and the defendant are best subserved by discharging the defendant without a judgment of conviction, after the defendant has successfully completed a *probationary period* " (quoting Sen. Stand. Comm. Rep. No. 616–76, in 1976 Senate Journal, at 1152)) (brackets and emphasis in original).

Based on the foregoing, it was decided that the deferral period of a DAGP and a probationary period were "closely analogous." *Id.* Because of the close relationship between the two statutes, it was deemed appropriate to apply the tolling provision contained in the probation statute to Kaufman's DAGP. *See id.* at 329, 991 P.2d at 839 ("Although HRS § 706–627 does not specifically address deferral periods under a DAG[P], the public policy concerns and legislative intent underlying the tolling of probation are equally applicable to the tolling of a deferral period pursuant to [a] DAG[P].")

## IX.

Consistent with the foregoing and as earlier noted, HRS § 853–1(b) provides in relevant part that "[t]he proceedings may be deferred upon any of the conditions specified by section 706–624." Relatedly, this court has observed that "by its express terms, the *provisions of HRS § 706–624* are exported and incorporated by reference into HRS § 853–1." *Kaufman,* 92 Hawai'i at 329, 991 P.2d at 839 (emphasis added). In turn, HRS § 706–624 lists conditions that can be imposed during a defendant's probation.[15] In conjunction with the conditions, HRS § 706–624(3) (1993), entitled "Written statement of conditions[,]" mandates that "*[t]he defendant shall be given a written copy of any requirements imposed* pursuant to this section, stated with sufficient specificity *to enable the defendant to guide the defendant's self accordingly."* (Emphases added.)

▮ In addition to guiding behavior, the Commentary on HRS § 706–624 explains that the purpose of notice in writing "is to provide the defendant with notice of what is expected of the defendant *in a form which will not escape the defendant's memory."* (Emphasis added.) The rationale for affording probationers a written copy of the conditions imposed during their probationary period is equally applicable to defendants granted DAGPs during the "closely analogous" "deferral period." *Kaufman,* 92 Hawai'i at 328, 991 P.2d at 838. Therefore, in much the same way, a defendant who must comply with conditions pursuant to a DAGP that are derived from the probation statute logically must be given notice of those *same* conditions "in a form which will not escape [his or her] memory." Commentary on HRS § 706–624. Inasmuch as defendants sentenced to probation and those granted a DAGP are similarly expected to comply with certain conditions to demonstrate that they can be "correct[ed] ... without interrupting

---

15. Pertinent to this case are the following provisions in HRS § 706–624:

    (1) Mandatory Conditions. *The court shall provide, as an explicit condition* of a sentence of probation:

    (a) *That the defendant not commit another federal or state crime during the term of probation;*

    . . . .

    (2) Discretionary conditions. *The court may provide,* as further conditions of a sentence of probation, ... that the defendant:

    . . . .

    (b) *Perform a specified number of hours of services to the community* as described in section 706–605(1)(e);

    . . . .

    (d) *Pay a fine* imposed pursuant to section 706–605(1)(b);

    . . . .

(Emphases added.)

[their] contact with open society[,]" *id.*, it is equally necessary to provide both categories of defendants with written notice of those conditions.

■ Furthermore, the incorporation of HRS § 706–624(3) is compatible with the underlying purposes of HRS chapter 853. DAGPs are utilized where, under the particular circumstances, "a record free of a felony conviction, which would foreclose certain educational, professional, and job opportunities may ... be more conducive to offender rehabilitation and crime prevention than the deterrent effects of a conviction and sentence." *State v. Naone,* 92 Hawai'i 289, 306, 990 P.2d 1171, 1188 (App.1999) (quoting 1976 Haw. Sess. L. Act 154, § 1 at 279); *see also State v. Martin,* 56 Haw. 292, 293, 535 P.2d 127, 128 (1975) (noting that the district court counseling service "recommended that, *based on [defendant's] lack of any prior criminal record,* or any academic or disciplinary problems, *gainful employment, and good character and reputation,* the motion for DAG[P] ... was worthy of consideration" (emphases added)). The conditions imposed pursuant to a DAGP, like those for probation, are intended to aid "the rehabilitation of the defendant." Commentary on HRS § 706–624.

Given the importance of abiding by the conditions in the DAGP scheme, it is manifest that defendants whose DAGPs are accepted should be explicitly apprised of the conditions of their pleas in writing. Accordingly, in connection with the conditions from HRS § 706–624 that are incorporated by reference in HRS § 853–1, the "provision" in HRS § 706–624(3) that requires a defendant who is granted probation to be given a written copy of the conditions, must necessarily apply to the defendant granted a DAGP, who must adhere to such similar conditions.

## X.

Based on the foregoing, the ICA correctly applied *Lee.* In *Lee,* the ICA reversed the circuit court's decision to revoke Lee's probation for violation of a condition on the ground that he was never given a written copy of the conditions of his probation. 10 Haw.App. at 192, 862 P.2d at 295–96. Looking to the Commentary on, and legislative history of,

HRS § 706–624(3), as observed before, *Lee* explained that the "intent [of HRS § 706–624(3) ] is to provide the defendant with notice of what is expected of him in a form which will not escape his memory." *Id.* at 198, 862 P.2d at 298 (quoting Commentary on HRS § 706–624 (1985)) (internal quotation marks omitted). The ICA added that this requirement "also provides assurance that a defendant will know the exact terms and conditions of his probation before his probation can be revoked for failure to comply with the terms and conditions." *Id.*

Because HRS § 706–624 is incorporated by reference into HRS § 853–1, *Lee's* reasoning is comparable here. The Hawai'i Legislature recognized that a DAGP is a "substantial benefit" conferred upon a defendant. Dissent at 36, 185 P.3d at 221 (quoting Sen. Stand. Comm. Rep. No. 2481, in 2000 Senate Journal, at 1026). However, this does not undermine the fact that the defendant is still subject to a "probationary" period and, therefore, only confirms the necessity of written conditions.

## XI.

As opposed to *Lee,* the federal cases relied upon by the dissent and the ICA dissent adopt an "actual notice" rule. *See* dissent at 39, 185 P.3d at 224 (stating that "federal case law interpreting similar federal statutes uniformly hold[s] that evidence of actual notice is sufficient to satisfy the federal statute's written notice requirement" (capitalization and boldfaced font omitted)); *see also Shannon,* 116 Hawai'i at 41, 169 P.3d at 993 (Nakamura, J., dissenting) (arguing in favor of the rule adopted in *Arbizu,* 431 F.3d at 470, that "the government's failure to provide the notice required by the statutes does not limit the [trial] court's authority to revoke supervised release where the defendant had actual notice of the release terms" (internal quotation marks omitted) (brackets in original)). The dissent finds persuasive the reasoning of the federal courts that have adopted an "actual notice" rule pursuant to 18 U.S.C. §§ 3583(f) and 3603(1). *See* dissent at 39–41, 185 P.3d at 224–226.

Those courts acknowledge that it would contravene the purpose of the statute to revoke a defendant's probation for violation of a condition of which the defendant was unaware. However, they posit that it was not Congress' intent "that a defendant who does not receive the proper written notice should be immune from revocation...." *Id.* at 40, 185 P.3d at 225 (quoting *Arbizu*, 431 F.3d at 471) (internal quotation marks and other citation omitted). The ICA dissent also found the reasoning of *Arbizu* persuasive, arguing that "[a] defendant who knows that his supervised release terms bar certain conduct

should not be allowed to engage in that conduct and then hide behind the government's failure to follow statutory notice procedures during sentencing." *Shannon*, 116 Hawai'i at 41–42, 169 P.3d at 993–94 (Nakamura, J., dissenting) (quoting *Arbizu*, 431 F.3d at 471) (internal quotation marks omitted).[16]

### A.

A straightforward reading of HRS § 706–624(3) prohibits the adoption of an "actual notice" rule. The version of HRS § 706–624(3) applicable when Petitioner's DAGP was accepted[17] provided that "[t]he defen-

16. As noted by the dissent, dissent at 39–40, 185 P.3d at 224–225, and the ICA dissent, *Shannon*, 116 Hawai'i at 41–42, 169 P.3d at 993–94 (Nakamura, J., dissenting), federal circuits define actual notice, in the context of 18 U.S.C. §§ 3583(f) and 3603(1), as notice "sufficient to serve as a guide for the defendant's conduct." *Felix*, 994 F.2d at 552 (citation and internal quotation marks omitted). In *Felix*, the Eighth Circuit held that the defendant received sufficient actual notice that he violate no laws while on supervised release for bank fraud charges, when the district judge orally told the defendant that supervised release was "like probation" and that "he had better not mess up on [the judge's] probation," which the defendant acknowledged and promised to "stay clean." *Id.* at 552.

In *Ortega–Brito*, 311 F.3d at 1138–39, the Ninth Circuit addressed a situation where the exchange between the defendant and judge was "virtually identical to that described in *Felix*." The Ninth Circuit held that the colloquy with the defendant, where the judge informed the defendant that the terms of his supervised release was "like parole" and that "if you do something wrong, you go back to jail," was sufficient oral notice to constitute actual notice of the defendant's conditions of compliance and satisfy the purposes of 18 U.S.C. §§ 3583(f) and 3603(1). *Id.* at 1139. Additionally, the *Ortega–Brito* court reasoned that its "holding [found] additional support in [defendant's] plea agreement, in which [defendant] acknowledges that he is in violation of the conditions of the release." *Id.*

In *United States v. Ramos–Santiago*, 925 F.2d 15, 16 (1st Cir.1991), the court concluded that the defendant's supervised release was properly revoked because it was "undisputed" that "upon being sentenced" the defendant and his counsel "received copies of the sentence, to which were attached, *inter alia* the conditions of his supervised release," the "essentials of the notice required" were met. *Id.* at 16–17. The notice was "sufficiently clear and specific ... to serve as a guide for [defendant]'s expected behavior during the term of supervised release." *Id.* at 17

Assuming *arguendo* that the standard announced in the aforementioned federal cases ap-

plies without considering the actual language and commentary of our own statute, the evidence presented in this case is insufficient to satisfy the requirement that a defendant be given notice sufficient to "serve as a guide for the defendant's conduct." *Felix*, 994 F.2d at 552. The record does not indicate that Respondent was orally apprised of the seriousness of remaining arrest and conviction free. Although the ICA noted in *dictum* that the "[the court] calendar reflects that [the court] orally apprised [Respondent] of his special conditions[,]" *Shannon*, 116 Hawai'i at 40, 169 P.3d at 992, nowhere in the calendar is it stated with specificity that Respondent was "apprised" of these terms. The court calendar merely delineates the conditions of Respondent's DAGP and, at best, shows what conditions the court intended to impose on Respondent's DAGP. Nor does the record indicate Respondent was told that his DAGP was "like parole," or that he "better not mess up," as in *Felix* and *Ortega–Brito*. The record also does not indicate, and the parties do not contest, whether Respondent was given a copy of his sentence as in *Ramos–Santiago*. Thus, it cannot be said that, based on the record, there exists substantial evidence to support the conclusion that Respondent was given sufficient actual notice even under the federal cases.

17. In 2006, HRS § 706–624(3) was amended to read:

. The court shall order the defendant at the time of sentencing to sign a written acknowledgement of receipt of conditions of probation. The defendant shall be given a written copy of any requirements imposed pursuant to this . section, stated with sufficient specificity to enable the defendant to comply with the conditions accordingly.

2006 Haw. Sess. L. Act 230, § 20 at 1010 (emphasis omitted). This amendment is inapplicable to Respondent inasmuch as the court accepted his DAGP on February 11, 2005, before the amendment became effective, *see* 2006 Haw. Sess. L. Act 230, § 54 at 1025 (providing that the act would take effect upon its approval), and the

dant *shall* be given a written copy of any requirements imposed pursuant to this section, stated with sufficient specificity to enable the defendant to guide the defendant's self accordingly." (Emphasis added.)

██ Contrary to the position espoused by the dissent and the ICA dissent, it is a well-established tenet of our statutory interpretation that the use of the word "shall" generally indicates the legislature's intention to make a provision mandatory, as opposed to discretionary. *See Gray v. Admin. Dir. of the Court,* 84 Hawai'i 138, 150 n. 17, 931 P.2d 580, 592 n. 17 (1997) (observing that "[t]he word 'shall' is generally construed as mandatory in legal acceptation"); *Voellmy v. Broderick,* 91 Hawai'i 125, 129–30, 980 P.2d 999, 1003–04 (App.1999) (declaring that "[t]he word 'shall' 'must be given a compulsory meaning ... and is inconsistent with a concept of discretion'" (quoting *Black's Law Dictionary* 1375 (6th ed.1990) (other citation omitted))); *but see Narmore v. Kawafuchi,* 112 Hawai'i 69, 83, 143 P.3d 1271, 1285 (2006) (noting that "[w]hile the word 'shall' is generally regarded as mandatory, in certain situations it may properly be given a directory meaning" (quoting *Jack Endo Elec., Inc. v. Lear Siegler, Inc.,* 59 Haw. 612, 616–17, 585 P.2d 1265, 1269 (1978) (citation omitted))). "We cannot change the language of the statute, supply a want, or enlarge upon it in order to make it suit a certain state of facts. We do not legislate or make laws." *State v. Dudoit,* 90 Hawai'i 262, 271, 978 P.2d 700, 709 (1999). Thus, under the plain and unambiguous language of HRS § 706–624(3), it is mandated that defendants be given written copies of their conditions.

### B.

██ Additionally, this court has interpreted the word "shall" as "directory" rather than mandatory only where a three part test has been satisfied.

In *Perry [v. Planning Comm'n of Hawaii County,* 62 Haw. 666, 619 P.2d 95 (1980) ], this court articulated a three-prong test for determining when the word "shall" may be interpreted as directory. First, "shall" can be read in a non-mandatory sense *when a statute's purpose "confute[s] the probability of a compulsory statutory design."* [*Id.*] at 676, 619 P.2d at 102. Second, "shall" will not be read as mandatory *when "unjust consequences" result. Id.* Finally, "the word 'shall' may be held to be merely directory, *when no advantage is lost, when no right is destroyed, when no benefit is sacrificed, either to the public or to the individual,* by giving it that construction." *Id.* at 677, 619 P.2d at 103.

*Leslie v. Bd. of Appeals of County of Hawai'i,* 109 Hawai'i 384, 394, 126 P.3d 1071, 1081 (2006) (emphases added). HRS § 706–624(3) does not meet any of the three *Perry* criteria.

First, there is nothing in the "statutory design" of either HRS chapter 706, part II, relating to probation, or HRS chapter 853, relating to DAGPs, that refutes the conclusion that HRS § 706–624(3) is "compulsory." *See id.* To the contrary, the underlying policy concerns that certain defendants be allowed to "rehabilitate" themselves while remaining conviction-free by complying with specific conditions, *see Putnam,* 93 Hawai'i at 367–68, 3 P.3d at 1244–45 (explaining the legislative intent to allow DAGPs so that certain offenders could "keep [their] record[s] free of a criminal conviction" (citation and emphasis omitted)), supports a conclusion that "shall," as used in HRS § 706–624(3), was meant to impose a mandatory duty on the court.

Second, "unjust consequences" would result if "shall" as used in this statute was construed to be directory. To illustrate, some defendants sentenced to probation or DAGPs could be given written conditions to guide their conduct, while others would not be accorded direction in a tangible form. Given the importance of the conditions in a probationary or DAGP framework, it would be inherently unfair to permit disparate enforcement of the requirement that defen-

---

amendment was not made retroactive, *see* 2006 Haw. Sess. L. Act 230, § 51 at 1025 (stating that "[t]his Act does not affect rights and duties that matured, penalties that were incurred, and pro-

ceedings that were begun, before its effective date"). Thus, the amendment does not change the analysis in this opinion.

dants be given the court's directive in writing to ensure compliance with the conditions.

Third, construing "shall" in this context as directory would deprive the individual defendants and society of the intended benefits of the DAGP. As described above, the written conditions are intended to facilitate adherence to the DAGP conditions and thus, promote compliance. Successful observance of the conditions benefits the individual, who remains conviction-free, and also benefits society, in that the present and future productivity of these defendants is preserved and enhanced. *Putnam,* 93 Hawai'i at 367–68, 3 P.3d at 1244–45 (explaining that "in certain criminal cases . . . it is in the best interest of the [prosecution] and the defendant that the defendant be given the opportunity to keep his [or her] record free of a criminal conviction, if he [or she] can comply with certain terms and conditions during a period designated by court order" (quoting 1976 Haw. Sess. L. Act 154, § 2 at 279)) (emphasis omitted) (brackets in original).

### C.

Similarly, *Lee* cited to *State v. Medina,* 72 Haw. 493, 824 P.2d 106 (1992), in support of its determination that "actual notice" was not a substitute for a written copy of the court's conditions in a similar context. *See Lee,* 10 Haw.App. at 198, 862 P.2d at 298 (holding that "[i]n view of the plain mandate and legislative purpose of HRS § 706–624," the defendant's probation could not be revoked for violation of conditions because the "[d]efendant was never given a written copy of the conditions of his probation"). In *Medina,* this court upheld the dismissal of charges against the defendant for violating a court order temporarily restraining him from contacting, threatening, or physically abusing the complainant. 72 Haw. at 493–94, 824 P.2d at 106. Although the defendant had "actual knowledge" of the order, *id.* at 494, 824 P.2d at 106, he had never been personally served with the order, contrary to HRS § 586–6, which then mandated that such orders "*shall be personally served upon the respondent* unless the respondent was pres-

ent at the hearing in which case the respondent may be served by regular mail[,]" *id.*

The *Medina* court found "unconvincing" the prosecution's argument that the defendant's "actual knowledge" of the existence of the order was sufficient to allow the prosecution for its violation, reasoning that "where statutory language is plain and unambiguous, that language must ordinarily be regarded as conclusive unless literal application would produce an absurd or unjust result clearly inconsistent with the purposes and policies of the statute." *Id.* at 494, 824 P.2d at 107 (citing *State v. Palama,* 62 Haw. 159, 612 P.2d 1168 (1980)). Analogously, in the situation where a probationer has not received a written copy of the conditions of his or her probation and is facing revocation, *Lee* indicated that "[t]he requirement of HRS § 706–624(3) . . . *also provides assurance that a defendant will know the exact terms and conditions of his probation before his probation can be revoked for failure to comply* . . . ." 10 Haw.App. at 198, 862 P.2d at 298 (emphasis added).

### D.

Based on the foregoing, it is manifest that sentencing courts are mandated to provide defendants written copies of the conditions of a DAGP. It would be violative of the statute to adopt an "actual notice" rule such as that applied by the federal courts as a substitute for written notice. The ICA's conclusion that "[the court] erred in setting aside [Respondent's] DAG[P] because [Respondent] did not receive a written copy of the conditions of his DAG[P,]" *Shannon,* 116 Hawai'i at 39, 169 P.3d at 992 (formatting altered), then, was correct.

### XII.

In contrast to the foregoing analysis, the dissent contends that (1) the written statement of conditions "is not a 'condition' *per se* by which further proceedings may be deferred[,]" dissent at 35, 185 P.3d at 220, (2) HRS § 853–3 provides consequences to the defendant if he or she violates the conditions set by the court pursuant to HRS §§ 853–1,[18]

706–624(1),[19] and 706–624(2),[20] *id.,* (3) HRS chapter 853 contains no "consequences for a court's non-compliance with *HRS § 706–624(3)* [,]" *id.* (citation omitted) (emphasis added), and (4) "complying with the plain language of both HRS § 853–1(b) and HRS § 853–3 would create a confusing incoher-ence should a trial court defer proceedings on the 'condition' of HRS § 706–624(3)[,]" *id.* (brackets omitted). Thus, according to the dissent, "the plain language of HRS § 853–1(b) is ambiguous" such that this court "may look to its legislative history for guidance." *Id.* at 35, 185 P.3d at 220.[21] Respectfully, this

18. In its entirety, HRS § 853–1 provides:
(a) Upon proper motion as provided by this chapter:
(1) When a defendant voluntarily pleads guilty or nolo contendere, prior to commencement of a trial, to a felony, misdemeanor, or petty misdemeanor;
(2) It appears to the court that the defendant is not likely again to engage in a criminal course of conduct; and
(3) The ends of justice and the welfare of society do not require that the defendant shall presently suffer the penalty imposed by law,
the court, without accepting the plea of nolo contendere or entering a judgment of guilt and with the consent of the defendant and after considering the recommendations, if any, of the prosecutor, may defer further proceedings.
(b) *The proceedings may be deferred upon any of the conditions specified by section 706–624.* As a further condition, the court shall impose a compensation fee pursuant to section 351–62.6.... The court my defer the proceedings for a period of time as the court shall direct but in no case to exceed the maximum sentence allowable.... The defendant may be subject to bail or recognizance at the court's discretion during the period during which the proceedings are deferred.
(c) Upon the defendant's completion of the period designated by the court and in compliance with the terms and conditions established, the court shall discharge the defendant and dismiss the charge against the defendant.
(d) Discharge of the defendant and dismissal of the charge against the defendant under this section shall be without adjudication of guilt, shall eliminate any civil admission of guilt, and is not a conviction.
(e) Upon discharge of the defendant and dismissal of the charge against the defendant under this section, the defendant may apply for expungement not less than one year following discharge, pursuant to section 831–3.2.
(Emphasis added.)

19. HRS § 706–624(1) sets forth the "mandatory conditions of probation," which at the time Respondent's DAGP was accepted included
(a) That the defendant not commit another federal or state crime during the term of probation;
(b) That the defendant report to a probation officer as directed by the court or the probation officer;
(c) That the defendant remain within the jurisdiction of the court, unless granted permission to leave by the court or a probation officer;
(d) That the defendant notify a probation officer prior to any change in address or employment;
(e) That the defendant notify a probation officer promptly if arrested or questioned by a law enforcement officer; and
(f) That the defendant permit a probation officer to visit the defendant at the defendant's home or elsewhere as specified b the court.

20. HRS § 706–624(2) enumerates the "discretionary conditions of probation," which at the time Respondent's DAGP was accepted, permitted a court "to the extent that the conditions are reasonably related" to general sentencing factors and "reasonably necessary," to require that the defendant (1) serve a term of imprisonment or house arrest, (2) perform community service, (3) meet various financial obligations, including making restitution, (4) avoid certain activities, people, and places (5) obtain necessary medical treatment, including treatment for substance abuse, and, pertinent to this case, (6) "[s]atisfy other reasonable conditions as the court may impose[.]"

21. The dissent also considers briefly the other arguments Respondent raised on appeal to the ICA, judging them to be without merit. *See* dissent at 40, 185 P.3d at 225. Although none of these issues are dispositive of this appeal, it is worth noting that Respondent's argument regarding the condition that he remain arrest free may have merit.

To summarize, Respondent argued that the court did not have statutory authority to impose a condition that he remain arrest free during his deferral period. In response, Petitioner argued, *inter alia,* that the court had authority under HRS § 706–604(1)(q) to require that Respondent "[s]atisfy other *reasonable conditions* as the court may impose." (Emphasis added.) It is questionable whether requiring a defendant to remain arrest free is a reasonable condition.

Unlike the other conditions delineated in HRS § 706–624, a defendant cannot control whether he or she is arrested. It would seem patently unfair to revoke a defendant's DAGP for failure to comply with conditions simply because the defendant was arrested, if it was later ascertained that the defendant had committed no misdeed. This consideration can be discerned in comparing HRS § 706–624(1)(a), which mandates that "the defendant *not commit another*

reasoning fails to comport with a plain reading of the mentioned statutes.

## A.

Conditions listed in HRS § 706–624(1) are denominated "mandatory conditions of probation[.]" Additional conditions are set out in HRS § 706–624(2) as "discretionary conditions of probation[.]" HRS § 853–1, by its express terms, incorporates these conditions with respect to the DAGP statute. *Cf. Kaufman*, 92 Hawai'i at 328, 991 P.2d at 838 (noting that "the DAG[P] statute, by its plain language and in light of its legislative history, provides that the deferral period ... [is] subject to [the] conditions of probation" (citations and internal quotation marks omitted)). Thus, HRS § 853–1(b) unambiguously establishes which conditions are applicable to DAGPs.[22]

HRS § 853–3 instructs that "[u]pon any violation of a term or condition set by the court for a [DAGP], the court may enter an

adjudication of guilt and proceed as otherwise provided." Accordingly, HRS § 853–3 manifestly establishes the dissent's so-called "consequences" of a violation. On the other hand, HRS § 706–624(3) unambiguously requires that "the defendant shall be given a written copy of any requirements imposed pursuant to this section, stated with sufficient specificity to enable the defendant to comply with the conditions accordingly."

On its face, HRS § 706–624(3) does not pertain to mandatory or discretionary conditions, but to the "written statement of conditions."[23] Plainly then, HRS § 706–624(3) does not pertain to *conditions* the defendant must comply with or follow. Rather, that section imposes a requirement on how the defendant is to be *notified* of the mandatory conditions under HRS § 706–624(1) and the discretionary conditions under HRS § 706–624(2) that the court has chosen to impose. *See* Commentary on HRS § 706–624 (explaining that the purpose of including the notice provision "is to provide the defendant with notice of what is expected of the defen-

*federal or state crime* during the time of probation[,]" (emphasis added) to HRS § 706–624(1)(e), which requires the defendant to "*notify a probation officer promptly if arrested* or questioned by a law enforcement officer." (Emphases added.) These sections seem to indicate that the statute distinguishes committing a crime and merely being arrested or suspected of doing so. The condition that Respondent remain "arrest and conviction free" blurs this distinction and therefore, may be unreasonable and impermissible.

22. The dissent relies on *State v. Sylva*, 61 Haw. 385, 605 P.2d 496 (1980), to conclude that construing *Lee* and the provisions of HRS 706–624 creates ambiguity. *See* dissent at 39, 185 P.3d at 224 (noting that this court, "notwithstanding the plain language of HRS § 853–4(7)," "limited application" of the statute to minors who were tried as adults (citing *Sylva*, 61 Haw. at 389, 605 P.2d at 499)). HRS § 853–4(7) provides that "[t]his chapter shall not apply when ... (7) [t]he defendant is found to be a law violator or delinquent child for the commission of any offense defined as a felony by the Hawaii Penal Code or for any conduct which if perpetrated in this state would constitute a felony[.]"

In *Sylva*, the defendant's request for a DAGP was denied pursuant to HRS § 853–4(7) because as a juvenile, he was adjudicated for offenses which would have been felonies if committed by an adult. 61 Haw. at 386, 605 P.2d at 497. On appeal, this court determined that reading the

statutory language "in the context of the entire statute and construed in a manner consistent with the purposes of the statutes[,]" HRS § 853–4(7) was ambiguous, and if followed literally would result in an absurd result, because "every defendant with a juvenile record for offenses which would have been felonies if committed by an adult would be automatically disqualified from the benefits of [a] DAG[P.]" *Id.* at 388–89, 605 P.2d at 498–99. Accordingly, as noted above, this court determined that HRS § 853–4(7) was applicable only in cases where the minor had been tried as an adult, *id.* at 389, 605 P.2d at 499, and gave the statute a remedial construction.

*Sylva* did not address whether reading HRS § 706–624 with HRS § 853–1 created ambiguity, and pertinently, was decided before the probation statute was enacted. In the instant case, reading HRS § 706–624 with HRS § 853–1 does not create any ambiguity with any other section or with the purposes of HRS § 853–1, and therefore, *Sylva* is inapposite. Further, the remedial construction applied in *Sylva* cannot be ignored.

23. Respectfully, the dissent's dismissal of *Lee*, on the ground that "construing the plain language of HRS § 853–1 was not before the ICA in that case[,]" dissent at 38, 185 P.3d at 223, undervalues the import of that case. As previously discussed, *see supra*, the ICA's reasoning in *Lee* is instructive in the instant case because *HRS § 706–624 is incorporated by reference into HRS § 853–1.*

dant in a form which will not escape the defendant's memory").

Thus, there are no "consequences" stated in HRS chapter 853 for non-compliance with HRS § 706–624(3) because HRS § 706–624(3) *does not relate to a condition imposed on the defendant.* The "consequences" in HRS § 853–3 obviously relate only to the defendant inasmuch as such consequences refer only to a condition "set by the court" for the defendant to follow. The court does not set as a condition of probation or of the DAGP that delivery of a written copy of the conditions be performed by the *defendant.* Moreover, the violation of conditions in HRS § 853–3 that "may result in an adjudication of guilt" patently would not apply to the failure to provide a statement of the conditions imposed upon the court system. Hence, contrary to the dissent's position, there cannot be any "confusing incoherence[,]" dissent at 35, 185 P.3d at 220, for a court under any plain reading of the statutes involved.[24]

The fact that HRS § 853–1 does not explicitly adopt the written condition provision of HRS § 706–624(3) does not mean HRS § 706–624(3) does not apply to DAGPs. As noted before, this court's precedent deems DAGPs and probation analogous, such that statutory provisions governing probation may be applied to DAGPs even when not explicitly authorized in the DAGP statute. *See, e.g., Kaufman,* 92 Hawai'i at 328, 991 P.2d at 838 (holding that "the DAG deferral period is closely analogous to a probationary period" such that "the probation tolling statute . . . applies analogously to the deferral of

a DAG[P]" (internal quotation marks omitted)). Given the similarity between probation and DAGPs previously recognized by this court, *see id.,* and the fact that both schemes impose the same conditions, *see* HRS § 853–1(b), it is evident that the conditions must be communicated to the defendant in the same way, whether the defendant is subject to probation or to a DAGP.

### B.

With all due respect, the dissent's analysis of the legislative history of HRS §§ 853–1, 853–3, and 706–624, *see* dissent at 35–38, 185 P.3d at 220–223, does not support its conclusion that HRS § 706–624(3) is not applicable to DAGP conditions. The dissent recites the amendments made and notes the paucity of guidance from the legislature, but otherwise fails to demonstrate how the legislative changes indicate that HRS § 706–624(3) is intended to apply only to probation and not to DAGPs. In fact, the legislature favors formality and regularity of procedures in informing defendants of the conditions by which they must abide.[25] *See* discussion *supra* and Commentary to HRS §§ 706–624 and 706–604.

### XIII.

### A.

▮ It would appear logical and consistent with the penal code's insistence that the regularity and formality of imposing probation or DAGP conditions in writing, should extend as well to a motion to revoke probation or DAGP for failure to comply with those

24. The dissent's assertion that there are no consequences if the court fails to comply with HRS § 706–624(3) cannot be agreed to. Aside from the reasons set forth *supra,* case law establishes that this failure renders the court incompetent to revoke a defendant's probation for failure to comply with those conditions. *See Lee,* 10 Haw. App. at 192, 862 P.2d at 295–96 (holding that "a defendant's probation may [not] be revoked for his failure to comply with a special condition of probation," when "he was never provided with written notice of that condition"); *cf. Kaufman* 92 Hawai'i at 328, 991 P.2d at 838 (holding that DAGPs and probation are closely analogous).

25. As noted before and significantly, the most recent amendment to HRS § 706–624(3) added

the provision that "[t]he court shall order the defendant at the time of sentencing to sign a written acknowledgement of receipt of conditions of probation." 2006 Haw. Sess. L. Act 230, § 20 at 1010. The amendment thus mandates a specific time at which the court must provide the defendant with the written copy of the conditions of probation, thereby making the process more uniform. Additionally, the direction that this be done at the time of sentencing, meaning that it must be done in a courtroom during a court proceeding, lends formality to the occasion. Thus, the importance of complying with the conditions is impressed upon the defendant. As noted *supra,* this amendment is not applicable to Respondent.

same conditions.[26] Moreover, the statutes regarding the imposition of conditions and the statutes regarding revocation for failure to comply with such conditions all relate to "probationary periods." *See Kaufman*, 92 Hawai'i at 328, 991 P.2d at 838. Hence, they must be read together. *See State v. Kupihea*, 98 Hawai'i 196, 202, 46 P.3d 498, 504 (2002) (" 'Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.' " (Quoting HRS § 1–16 (1993)) (other citation omitted) (underscoring added)); *Putnam*, 93 Hawai'i at 371 n. 9, 3 P.3d at 1248 n. 9.

### B.

As noted previously, HRS § 706–624(3) requires that defendants be given written copies of conditions on probation. In that connection, HRS § 706–627(1) (1993) provides that

*[u]pon the filing of a motion to revoke a probation* ... *the period of probation shall be tolled pending the hearing upon the motion and the decision of the court. The period of tolling shall be computed from the filing date of the motion through and including the filing date of the written decision of the court* concerning the motion for purposes of computation of the remaining period of probation, if any. *In the event the court fails to file a written decision upon the motion, the period shall be computed by reference to the date the court*

*makes a decision upon the motion in open court.* During the period of tolling of the probation, the defendant shall remain subject to all terms and conditions of the probation except as otherwise provided by this chapter.

(Emphases added.) First, reading the plain language of this statute, it is evident that a motion to revoke probation, and by analogy, a motion to revoke a DAGP, must be in writing. *Cf. Kaufman*, 92 Hawai'i at 329, 991 P.2d at 839 (concluding that the express language of the DAGP statute as well as "the public policy concerns and legislative intent underlying the tolling of probation" rendered that provision "equally applicable to the tolling of a deferral period pursuant to [a] DAG[P]"). The statute expressly requires that such a motion be filed. "File" is not defined in the statute. In its ordinary application, to "file" is "to deliver a legal document to the court clerk or record custodian for placement into the official record." *Black's Law Dictionary* 660 (8th ed.2004). *See Blaisdell v. Dep't of Pub. Safety*, 113 Hawai'i 315, 319, 151 P.3d 796, 800 (2007) ("Where a term is not statutorily defined ... we may rely upon extrinsic aids to determine such intent. Legal and lay dictionaries are extrinsic aids which may be helpful in discerning the meaning of statutory terms." (Quoting *Singleton v. Liquor Comm'n*, 111 Hawai'i 234, 243–44, 140 P.3d 1014, 1023–24 (2006) (internal quotation marks, brackets, and citation omitted))).[27]

---

26. Although this issue was not raised in the application for certiorari, it was argued to the ICA. Respondent argued that the plain and unambiguous language of HRS § 706–627(1) "require[s] the filing of a *written* motion to set aside a DAG[P] in order to toll the deferral period ... as a matter of procedural due process." (Emphasis in original.) Accordingly, Respondent argued that because Petitioner did not file a written motion to revoke Respondent's DAGP, "the one-year period of deferral had expired" "by February 11, 2006," "and [the court] was without jurisdiction to set aside the DAG[P] ... on April 6, 2006."

Petitioner answered that "revocation of a DAGP is specifically and expressly governed by HRS § 853–3[,]" (quoting *State v. Putnam*, 93 Hawai'i 362, 368, 3 P.3d 1239, 1245 (2000), a "plain reading of [which] ... does not require that a written motion be filed in order to set

aside [a d]efendant's DAG[P].)" Relatedly, Petitioner posited that absent "an expressed requirement within the DAG[P] statute of a written motion to set aside, the oral motion would seem to suffice." (Citing *State v. Rabago*, 103 Hawai'i 236, 245, 81 P.3d 1151, 1160 (2003)). Finally, Petitioner argued that Respondent "had ample notice of [its] intention to set-aside [sic] his deferral from his appearance before the court on January 27, 2006, for a proof of compliance hearing, wherein he was found in violation of his DAGP terms...."

27. Our courts have not addressed whether an oral motion constitutes the "filing of a motion" under HRS § 706–627(1). Neither Petitioner nor Respondent offers cases to support its or his respective contentions on this issue.

In this context, a plain reading of the statute leads to the conclusion that the "filing of a motion" is required to be in writing. *See Putnam*, 93 Hawai'i at 367, 3 P.3d at 1244 (instructing that "we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose" (citation omitted)). Hence, only written motions can be presented to the court clerk to be placed into the official record. *See State v. Gomes*, 117 Hawai'i 218, 232, 177 P.3d 928, 942 (2008) (stating that this court is "bound to construe statutes so as to avoid absurd results" (quoting *Tauese v. Dep't of Labor & Indus. Relations*, 113 Hawai'i 1, 31, 147 P.3d 785, 815 (2006) (internal quotation marks and citation omitted))). In contrast, oral motions, such as the one challenged herein, cannot be "filed" for inclusion in the official record.

## C.

Second, reading HRS § 706-624(3) *in pari materia* with HRS § 706-627(1), it is evident that the legislature favors formality where conditions of probation and analogously, DAGPs are concerned, such that both the conditions and motions to revoke for failure to comply with those conditions must be in writing. The commentary on HRS § 706-627 supports the conclusion that the motion to revoke probation must be in writing.

It emphasizes that the statute requires "written notice" of the intent to revoke as a matter of procedural due process. Specifically, it states in relevant part that

> [t]his section affords the defendant threatened with loss or change of suspension or probation status *the same procedural protection afforded a defendant at the time of original disposition. Determinations to revoke suspension or probation, or to change the conditions thereof, are some-times made with a degree of informality that does not afford to the defendant adequate opportunity to obtain counsel and to be heard upon the evidence.*
>
> *This is an area where dangers of abuse are real and the normal procedural protection proper.* That a defendant has no right to suspension or probation does not justify the alteration of his status by methods that must seem and sometimes be unfair.
>
> Although *written notice*, the right to be represented by counsel, and the right to controvert and be heard upon the evidence, *are provided by this section*, it is not contemplated that the court must strictly enforce the rules of evidence. . . .

Commentary on HRS § 706-627 (emphases added) (citation omitted) (quoting Model Penal Code, Tentative Draft No. 2, comments at 152 (1954)). The procedural protections available at the time of original sentencing are codified at HRS 706-604 (1993 & Supp. 2006).[28] Those protections include (1) the opportunity to be heard and (2) the opportunity to review, dispute, or supplement any pre-sentencing diagnosis or medical examination report.

The defendant must be informed of the presentence report beforehand in order to prepare for the hearing on his sentence. The Commentary on HRS § 706-604 explains that "[t]he right of the defendant to controvert the pre-sentence report is meaningless to the extent that the report, or a part thereof, is not made available to the defendant." As a matter of due process a motion to revoke probation or, analogously, to revoke a DAGP is like a presentence report in that the defendant must be notified beforehand in order to allow him to contest it, if he wishes. The same formality must

---

28. HRS § 706-604 provides, in pertinent part, that:

> (1) *Before imposing sentence, the court shall afford a fair opportunity to the defendant to be heard on the issue of the defendant's disposition.*
>
> (2) *The court shall furnish* to the defendant or the defendant's counsel ... *a copy of the report of any pre-sentence diagnosis or psychological,* psychiatric, or other medical examination *and afford fair opportunity,* if the defendant or the prosecuting attorney so requests, *to controvert to supplement them.* The court shall amend or order the amendment of the report upon finding that any correction, modification, or addition is needed and, where appropriate, shall require the prompt preparation of an amended report in which material required to be deleted is completely removed or other amendments, including additions, are made. (Emphases added.)

exist because a motion to revoke probation or a DAGP allows the court to render other sentencing alternatives that had been open to it at the time of the original sentencing.

Additionally, HRS § 706–604 requires that "the court shall furnish a *copy* of the [presentence] report...." (Emphasis added.) In line with this "procedural protection[,]" the penal code indicates that a defendant, "threatened with loss or change of ... probation status[, must be given] the same procedural protection afforded ... at the time of original disposition[, *i.e.*, sentencing]." Commentary on HRS § 706–627. Similarly, a motion to revoke probation or a DAGP must also be in writing and the defendant provided a copy in a manner equivalent to the procedural protection of written conditions that was originally required "at the time of original disposition." *Id.*

The Commentary on HRS § 706–604 posits that "[a]nything less than full disclosure is inconsistent with the truth-seeking function of the judicial process and the rehabilitative function of penal sentences." These concerns lend credence to the position that motions to revoke are weighty matters deserving proportional solemnity in their resolution. *See* Commentary on HRS § 706–627 ("Determinations to revoke ... probation are sometimes made with a degree of informality that does not afford ... adequate opportunity ... to be heard....").

## XIV.

The dissent concludes that because HRS § 706–627(1) refers to a written ruling by the court on a motion to revoke probation, but does not contain a similar reference to initiating the motion to revoke, non-written revocation motions satisfy the statutory requirements. Dissent at 41, 185 P.3d at 226 (arguing "that the legislature intended, for purposes of tolling a deferral period," an oral motion to revoke a DAGP suffices (citing

*State v. White*, 110 Hawai'i 79, 83, 129 P.3d 1107, 1111 (2006) (for the proposition that "[w]hen construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself"))). However, it appears that under HRS § 706–627(1),[29] a court's written decision on a motion to revoke probation establishes a definite end date for purposes of tolling the probationary period. If, however, a written decision is not filed by the court, the probationary period could conceivably be tolled indefinitely, subject to other rules. *See, e.g., Kaufman,* 92 Hawai'i at 327, 991 P.2d at 837 (explaining that "[a] court may defer the proceedings for such period of time as the court shall direct but in no case to exceed the maximum sentence allowable").

Therefore, HRS § 706–627(1) anticipates that a court may make an oral ruling on a motion to revoke probation but fail to reduce its ruling to writing, and, in the interest of finality, allows the tolling period to be computed using the date of the oral ruling under those circumstances. Based on the foregoing, it is manifest that the "written" decision of the court is not analogous to the prosecution's motion to revoke probation, but rather, is one of two conceivable ways the applicable tolling period may be measured from the time a motion to revoke is filed. Indeed, as opposed to an acknowledgment in the statute that courts may "fail to file a written decision," nothing in the statute tolerates the "fail[ure] to *file* a written" motion to revoke. (Emphasis added.) *See* discussion *supra.*

## XV.

Because Petitioner did not file a written motion to revoke Respondent's DAGP, the probationary period was not tolled. Respondent's DAGP was entered on February 11, 2005. The court accepted the DAGP and imposed a one-year deferral period. On Jan-

---

**29.** To reiterate, the pertinent portion of the statute provides:

The period of tolling shall be computed from the filing date of the motion through and including the *filing date of the written decision of the court* concerning the motion for purposes of computation of the remaining period of pro-

bation, if any. *In the event the court fails to file a written decision* upon the motion, the period shall be computed by reference to the date the court makes a decision upon the motion in open court.

HRS § 706–627(1) (emphases added).

uary 27, 2006, Petitioner made its oral motion to revoke Respondent's DAGP. As stated above, because the motion was not in writing, it was ineffective for purposes of tolling the deferral period. Thus, the deferral period terminated on February 11, 2006.

■ On April 6, 2006, the court purported to set aside Respondent's DAGP. However, inasmuch as the deferment period had expired approximately two months earlier, the court lacked jurisdiction to revoke Respondent's DAGP. *See Kealaiki*, 95 Hawai'i at 315, 22 P.3d at 594 ("Successful completion of the deferral period results in dismissal of the charge and can lead to expungement of the defendant's criminal record." (Citing HRS § 853–1(c) and (e))); *Putnam*, 93 Hawai'i at 368, 3 P.3d at 1245 (explaining that the legislature's intent in enacting the DAGP statute was "to enable a defendant to retain a record free of a criminal conviction by deferring a guilty plea for a designated period and imposing special conditions which the defendant was to successfully complete" (citation and internal quotation marks omitted)); *Kaufman*, 92 Hawai'i at 327, 991 P.2d at 837 (noting that, pursuant to HRS § 853–1(c), "a court cannot set aside a DAG[P] after the period of deferral has expired"); *see also State v. Viloria*, 70 Haw. 58, 60, 759 P.2d 1376, 1377 (1988) ("A sentencing court had jurisdiction to revoke a sentence of probation up until the termination of probation."); *Palama*, 62 Haw. at 162, 612 P.2d at 1170 ("[A] sentencing court [has] the authority to revoke the probation of a defendant at any time before the termination of the period of probation . . . ."); [30] *cf. State v. Tom*, 69 Haw. 602, 603, 752 P.2d 597, 598 (1988) (affirming the trial court's denial of a deferred acceptance of no contest (DANC) plea in a drunk driving case because "[a] repeat offender given a DANC plea on the first offense could . . . escape enhanced sentencing under the DUI statute by committing a second offense after DANC jurisdiction had expired but within the five year period of the DUI sentencing scheme" (citation omitted)). Inasmuch as Respondent's DAGP could not have been revoked for lack of written conditions,

see *Lee, supra*, and Petitioner's oral motion to revoke should have been in writing, the decision of the ICA is affirmed, the court's order granting Petitioner's motion to set aside Respondent's DAGP is vacated, and the matter is remanded with instructions to dismiss the motion with prejudice.

Dissenting Opinion by NAKAYAMA, J.

I respectfully dissent. Pursuant to the following discussion, I believe that the plain language of Hawai'i Revised Statutes (HRS) § 853–1(b) (1993 & Supp.2007) as it applies to HRS § 706–624(3) (1993 & Supp.2007) is ambiguous, and would hold that actual notice of the terms and conditions of a deferred acceptance of guilty plea ("DAG plea") is sufficient to satisfy considerations of fairness to the defendant in this case, Eric Kanoa Shannon ("Shannon").

## I. DISCUSSION

### A. In My View, the Plain Language Of HRS § 853–1(b) As It Applies To HRS § 706–624(3) Is Ambiguous.

In its writ of certiorari, the prosecution requests that this court interpret the plain language of HRS § 706–624(3) in such a way as to hold that actual notice is sufficient to satisfy the statute's written notice requirement. To this end, the prosecution largely relies on the dissent's reasoning in the Intermediate Court of Appeals' opinion of the instant case.

Rather than strictly construe the plain language of HRS § 706–624(3), the dissent would hold that "a defendant who has actual notice or knowledge of the condition of a DAG plea should not be allowed to avoid punishment for violating those conditions simply because the defendant was not provided with written notice." *State v. Shannon*, 116 Hawai'i 38, 41, 169 P.3d 990, 993 (2007) (Nakamura, J., dissenting). The dissent relied on federal court decisions that have been confronted with the issue of "whether the failure to provide the defendant

---

30. *Palama* discussed HRS § 706–628, which at the time governed the revocation of probation or suspension of sentence. In 1985, HRS § 706– 628 was repealed and consolidated with HRS § 706–625. 1985 Haw. Sess. L. Act 192, §§ 1, 3 at 327–28.

with written notice of the conditions of supervised release, as required by statute, automatically invalidates the trial court's revocation of the defendant's supervised release." *Id.* The dissent observed that "every other [federal circuit] to address this issue" have held that "the 'government's failure to provide the [written] notice required by the [federal] statutes does not limit the [trial] court's authority to revoke supervised release where the defendant had actual notice of the release terms.'" *Id.* (quoting *United States v. Arbizu*, 431 F.3d 469 (5th Cir.2005)) (alterations added and in original). As the dissent noted, "[f]ederal law requires that defendants sentenced to a term of supervised release be provided with written notice of the conditions of release." *Id.* Section 3583(f) of Title 18 of the United States Code provides, in its entirety:

> **Written statement of conditions.** The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

The Fifth Circuit observed that

> [t]he purpose of [18 U.S.C.] §§ 3583(f) and 3603(1) [1] is to ensure that the defendant is notified of the conditions of his supervised release. Congress decided that requiring the probation officer to provide the defendant with written notice of the conditions is the best way to ensure the defendant knows what is expected of him during the supervised release period. It would be patently unfair to revoke a defendant's supervised release and send him back to prison for violating conditions of the release that he had no way of knowing existed.
>
> Congress, however, did not decide that a defendant who does not receive the proper written notice should be immune from revocation of supervised release. A defendant who knows that his supervised release terms bar certain conduct should not be allowed to engage in that conduct and then hide behind the government's failure to follow statutory notice procedures during sentencing.

*Id.* at 41–42, 169 P.3d at 993–94 (quoting *Arbizu*, 431 F.3d at 471).

Hawaii's DAG plea statutory framework is subsumed under HRS chapter 853. HRS § 853–1(b) provides, in its entirety:

> **Deferred acceptance of guilty plea or nolo contendere plea; discharge and dismissal, expungement of records.**
>
> . . . .
>
> (b) *The proceedings may be deferred upon any of the conditions specified by section 706–624.* As a further condition, the court shall impose a compensation fee pursuant to section 351–62.6 upon every defendant who has entered a plea of guilty or nolo contendere to a petty misdemeanor, misdemeanor, or felony; provided that the court shall waive the imposition of a compensation fee, if it finds that the defendant is unable to pay the compensation fee. The court may defer the proceedings for a period of time as the court shall direct but in no case to exceed the maximum sentence allowable; provided that, if the defendant has entered a plea of guilty or nolo contendere to a petty misdemeanor, the court may defer the proceedings for a period not to exceed one year. The defendant may be subject to bail or recognizance at the court's discretion during the period during which the proceedings are deferred.

(Emphasis added.)

HRS § 706–624 is organized in the following manner:

> **Conditions of probation.**
>
> (1) Mandatory conditions. The court shall provide, as an explicit condition of a sentence of probation:
>
> . . . .
>
> (2) Discretionary conditions. The court may provide, as further conditions of a

---

1.  18 U.S.C. § 3603(1) provides, in its entirety:

    A probation officer shall—

      (1) instruct a probationer or a person on supervised release, who is under his supervision, as to the conditions specified by the sentencing court, and provide him with a written statement clearly setting forth all such conditions[.]

sentence of probation, to the extent that the conditions are reasonably related to the factors set forth in section 706–606 and to the extent that the conditions involve only deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 706–606(2), that the defendant:

. . . .

(3) Written statement of conditions. The court shall order the defendant at the time of sentencing to sign a written acknowledgment of receipt of conditions of probation. The defendant shall be given a written copy of any requirements imposed pursuant to this section, stated with sufficient specificity to enable the defendant to comply with the conditions accordingly.

HRS § 706–624(1) specifies seven "[m]andatory conditions," *see* HRS § 706–624(1)(a)–(g), which includes "[t]hat the defendant not commit another federal or state crime or engage in criminal conduct in any foreign jurisdiction or under military jurisdiction that would constitute a crime under Hawaii law during the term of probation." HRS § 706–624(1)(a). HRS § 706–624(2), meanwhile, specifies seventeen "[d]iscretionary conditions." *See* HRS § 706–624(2)(a)–(q).

Reading HRS § 706–624(3) together with the plain language of HRS § 853–1(b), which incorporates by reference "the conditions specified by [HRS § ] 706–624," it appears reasonable to conclude that HRS § 706–624(3) is not a "condition" *per se* by which further proceedings may be deferred. Indeed, HRS § 853–3 (1993) mandates that "[u]pon violation of a term or condition set by the court for a deferred acceptance of guilty plea or deferred acceptance of nolo contendere plea, the court may enter an adjudication of guilt and proceed as otherwise provided." Nothing within HRS chapter 853 provides consequences for a court's non-compliance with HRS § 706–624(3). *See* HRS §§ 853–1 to–4. As such, complying with the plain language of both HRS § 853–1(b) and HRS

§ 853–3 would create a confusing incoherence should a trial court defer proceedings on the "condition[ ]" of HRS § 706–624(3). *See State v. Putnam*, 93 Hawai'i 362, 368–69, 3 P.3d 1239, 1245–46 (2000) ("We conclude that, because a court's course of action following revocation is expressly set forth in HRS § 853–3, no need or justification arises for resort to any other statute, such as HRS § 706–625(5), for guidance in the situation presented by Defendant's case."); *see also Gray v. Admin. Dir. of the Court*, 84 Hawai'i 138, 148, 931 P.2d 580, 590 (1997) ("[T]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality."). Because of this incoherence, I would hold that the plain language of HRS § 853–1(b) is ambiguous, and accordingly look to its legislative history for guidance. *See State v. White*, 110 Hawai'i 79, 83, 129 P.3d 1107, 1111 (2006).

**B. The Legislative History Of HRS §§ 853–1(b) and 706–624(3).**

*1. HRS § 853–1(b)*

Enacted in 1976,[2] HRS chapter 853 was intended "to establish a means whereby a court in its discretion may defer acceptance of a guilty plea . . . for a certain period on certain conditions with respect to certain defendants." Hse. Conf. Comm. Rep. No. 31, in 1976 House Journal, at 1140. In so establishing, a "defendant [has] the opportunity to keep his record free of criminal conviction, if he can comply with those terms and conditions during the period designated by court order." *Id.* "The completion of such period in compliance with such conditions may then result in the discharge of the defendant and expungement of the matter from his record." 1976 Haw. Sess. L. Act 154, § 1 at 279. Hawaii's legislature concluded that "[i]t is in the best interest of the State that in certain criminal cases, particularly those involving first time, accidental, or situational offenders,

**2.** The language of HRS § 853–1(b) as enacted in 1976 provided as follows:

The proceedings may be deferred upon any of the conditions specified by section–624, Hawaii Penal Code. The court may defer the proceedings for such period of time as the

court shall direct but in no case to exceed the maximum sentence allowable. The defendant may be subject to bail or recognizance at the court's discretion during the period which the proceedings are deferred.

1976 Haw. Sess. L. Act 154, § 2 at 280.

the offender not be burdened with the stigma of having a criminal record for the rest of his life." *Id.* Indeed, a DAG plea was intended as a "sentencing alternative" for those "cases wherein the facts and circumstances clearly indicate that the defendants are one-time, situational or accidental offenders who will not engage in further criminal activity and do not pose a threat to the safety of the community." Sen. Stand. Comm. Rep. No. 616–76, in 1976 Senate Journal, at 1152. "For these offenders, the humiliation and inconvenience of arrest and prosecution satisfy the need for punishment; and a trial and conviction would serve no purpose other than to impair the offenders' educational, employment, and professional opportunities and ability to function as a responsible and productive member of the community." *Id.* Additionally, "the [DAG plea] procedure ... has the ... benefit of saving time and money for the criminal justice system without adversely affecting the public interest." Also, "[i]t will further relieve the congestion in the courts and enable the criminal justice system to direct its limited resources where they can be most beneficial to the community." *Id.*

Accordingly, HRS chapter 853 was enacted to

[s]et out specifically and in detail: (a) how the court shall discharge the defendant and dismiss the charge against him; (b) that the defendant may apply for expungement of all recordation relating to his arrest, arraignment, indictment, information, plea of guilty, or dismissal and discharge and the exceptions thereto; (c) proceedings for commencing a "DAG" plea; (d) the legal consequences of violation of terms and conditions during deferment; and (e) when the "DAG" plea chapter would not be applicable.

1976 House Journal, at 1140.

In 1988, HRS § 853–1(b) was amended to include the following words: "(b) ... unless the defendant has entered a plea of guilty or nolo contendere to a petty misdemeanor, in which case the court may defer the proceedings for a period not to exceed one year." 1988 Haw. Sess. L. Act 184, § 1 at 314. Inclusion of this amendment was intended to

provide a trial court with "the discretion to impose a period of time which the court finds to be necessary to effectively assess the success of the [DAG plea]." Sen. Stand. Comm. Rep. No. 2148, in 1988 Senate Journal, at 924.

In 2000, HRS § 853–1(b) was amended to include the following words:

(b) ... As a further condition, the court shall impose a compensation fee pursuant to section 351–62.6 upon every defendant who has entered a plea of guilty or nolo contendere to a petty misdemeanor, misdemeanor, or felony; provided that the court shall waive the imposition of a compensation fee, if it finds that the defendant is unable to pay the compensation fee.

2000 Haw. Sess. L. Act 115, § 3 at 232–33. In imposing this fee, Hawaii's legislature recognized the "substantial benefit" that a DAG plea under HRS § 853–1 confers upon a defendant ("assuming the defendant meets all the conditions and terms" imposed by the trial court), inasmuch as "the charges are dismissed without adjudication of guilt and the defendant is discharged and may apply for expungement." Sen. Stand. Comm. Rep. No. 2481, in 2000 Senate Journal, at 1026; Hse. Stand. Comm. Rep. No. 980–00, in 2000 House Journal, at 1365.

Pursuant to the foregoing, this court has determined that "the granting of a DAG plea is an act of legislative grace, within the discretion of the trial court; it is not a matter of right for the defendant." *State v. Kaufman,* 92 Hawai'i 322, 329, 991 P.2d 832, 839.[3] In *Kaufman,* the defendant pled guilty to twenty-six counts of theft in the first degree and moved for a DAG plea, which the circuit court granted. *Id.* at 323–24, 991 P.2d at 833–34. The defendant's DAG plea was conditioned on the defendant being "free from further conviction for a period of five years[,]" and to "reimburse all monies received...." *Id.* at 324, 991 P.2d at 834. The trial court deferred acceptance of the defendant's DAG plea for five years, but the deferment period was extended for an additional five years, bringing the total deferment period to ten years. *Id.* at 327, 991 P.2d at 837.

**3.** I note that even though *Kaufman* did not address the same issue, its reasoning is persuasive.

On appeal, the defendant asserted, *inter alia,* that "the tolling provision applicable to probation, HRS § 706–627, should not apply." [4] *Id.* at 328, 991 P.2d at 838. Pursuant to the legislative history of Hawaii's DAG plea statutes and HRS § 706–627, this court held that the public policy behind HRS § 706–627 supported its applicability to a DAG plea, inasmuch as "[w]ithout tolling, a person subject to a deferral period pursuant to a DAG plea *would effectively escape the sanction of revocation* simply because his untolled deferral period had expired before the trial court ruled on the revocation." *Id.* at 329, 991 P.2d at 839 (emphasis added). Accordingly, this court determined that "we cannot construe the law in such a way that would preclude the trial court's setting aside of [a defendant's] DAG plea merely because the hearing was postponed beyond the deferral period, especially when [the defendant] contributed and agreed to the delay of the circuit court's decision on [the] motion to set aside [the] DAG plea." *Id.*

### 2. *HRS § 706–624(3)*

In light of the foregoing, I will now review the legislative history of HRS § 706–624(3) for additional guidance. Enacted in 1972, HRS § 706–624(4), as it was known then, provided the following language: "The defendant shall be given a written copy of any requirements imposed pursuant to this section, stated with sufficient specificity to enable him to guide himself accordingly." 1972 Haw. Sess. L. Act 9, § 1 at 75–76. This statute was enacted as part of a reformation of the Hawai'i Penal Code ("HPC"), which is based on the Model Penal Code ("MPC"). Hse. Conf. Comm. Rep. No. 1, in 1972 House Journal, at 1035.

In 1986, HRS § 706–624(4) became HRS § 706–627(3), which provided in its entirety: "(3) Written statement of conditions. The defendant shall be given a written copy of any requirements imposed pursuant to this section, stated with sufficient specificity to enable the defendant to guide the defendant's self accordingly." 1986 Haw. Sess. L. Act 314, § 25 at 606. This amendment was included among many "comprehensive amendments that would refine the penal code rather than propose widesweeping reform." Hse. Conf. Comm. Rep. No. 51–86, in 1986 House Journal, at 937. The legislature generally intended that "[t]he amendments to section 706 … demonstrate a shift from the present approach of sentencing which emphasizes rehabilitation toward achieving the goal of just punishment." *Id.* at 938. The legislature was silent as to their intent of the amendment to HRS § 706–624 specifically.

In 2006, Hawaii's legislature again made numerous "substantive and technical amendments to" the HPC, Hse. Conf. Comm. Rep. No. 94–06, in 2006 House Journal, at 1813, which included revising HRS § 706–624(3) to its present form, as follows:

> (3) Written statement of conditions. The court shall order the defendant at the time of sentencing to sign a written acknowledgement [sic] of receipt of conditions of probation. The defendant shall be given a written copy of any requirements imposed pursuant to this section, stated with sufficient specificity to enable the defendant to comply with the conditions accordingly.

2006 Haw. Sess. L. Act 230, § 20 at 1010. Again, there is no indication of legislative

---

**4.** HRS § 706–627 (1993) provides, as follows:

(1) Upon the filing of a motion to revoke a probation or a motion to enlarge the conditions imposed thereby, the period of probation shall be tolled pending the hearing upon the motion and the decision of the court. The period of tolling shall be computed from the filing date of the motion through and including the filing date of the written decision of the court concerning the motion for purposes of computation of the remaining period of probation, if any. In the event the court fails to file a written decision upon the motion, the period shall be computed by reference to the date the court makes a decision upon the motion in open court. During the period of tolling of the probation, the defendant shall remain subject to all terms and conditions of the probation except as otherwise provided by this chapter.

(2) In the event the court, following hearing, refuses to revoke the probation or grant the requested enlargement of conditions thereof because the defendant's failure to comply therewith was excusable, the defendant may be granted the period of tolling of the probation for purposes of computation of the remaining probation, if any.

intent outside of the changes made to the plain language of HRS § 706–624(3).

The Commentary to HRS § 706–624, however, states that what was then known as "[s]ubsection (4) is an addition to the law suggested by the Model Penal Code and accepted in other states. The intent is to provide the defendant with notice of what is expected of the defendant in a form which will not escape the defendant's memory." (Citing M.P.C. § 301.1, Tentative Draft No. 2, comments at 145–46 (1954).)

## C. In My View, the ICA Gravely Erred When It Held That HRS § 706–624(3) Was Incorporated By Reference Into Hawaii's DAG Plea Statutory Framework Through HRS § 853–1(b).

Most closely analogous to the instant case is this court's opinion in *State v. Huggett*, 55 Haw. 632, 636–37, 525 P.2d 1119, 1122–23 (1974), where this court gleaned guidance from several federal court decisions to conclude that even though the defendant "neither saw nor signed the written conditions of probation applicable to him[,]" oral notice of a condition is sufficient to revoke his probation for failing to comply with that condition. In *State v. Lee*, 10 Haw.App. 192, 197, 862 P.2d 295, 297 (1993), however, the ICA noted that "*Huggett* ... involved an offense committed in 1971, prior to the effective date (January 1, 1973) of the Hawaii Penal Code."

The ICA in the instant case relied solely on its opinion in *Lee* to reject the prosecution's argument that "Shannon's receipt of actual, oral notice at the February 11, 2005 hearing was sufficient." *Shannon*, 116 Hawai'i at 40, 169 P.3d at 992. In *Lee*, the defendant pled no contest to the offense of sexual assault in the third degree, and was sentenced to a term of five years of probation and twelve months in jail. 10 Haw.App. at 193, 862 P.2d at 296. The defendant's jail term was suspended, however, on certain conditions. *Id.* Because the defendant violat-

ed one of these conditions, the prosecution moved to revoke his probation, which was granted by the trial court. *Id.* at 194–95, 862 P.2d at 296–97. On appeal, the ICA reversed the trial court's decision on the ground that the defendant was not provided with written notice of the terms and conditions of his probation pursuant to the plain language of HRS § 706–624(3). *Id.* at 197–98, 862 P.2d at 297–98. Notwithstanding the ICA's holding in *Lee*, I believe that *Lee* is distinguishable because construing the plain language of HRS § 853–1(b) was not before the ICA in that case, and the plain language of HRS § 706–624(3), independent of HRS § 853–1(b), appears unambiguous.

Particularly persuasive in that connection is this court's discussion in *State v. Sylva*, 61 Haw. 385, 605 P.2d 496 (1980). In *Sylva*, the defendant pled guilty to the offense of burglary in the second degree, but was denied his request for a DAG plea pursuant to HRS § 853–4(7).[5] 61 Haw. at 386, 605 P.2d at 497. The defendant in *Sylva* was thirty-one years old and without a felony conviction as an adult. *Id.* However, as a juvenile, the defendant was adjudicated for thirty-six malicious conversion offenses, three attempted malicious conversion offenses, and three burglary offenses. *Id.* The trial court determined that because of the defendant's prior juvenile record, he was statutorily disqualified to a DAG plea. *Id.*

On appeal, this court determined that "when read independently of the other subsections," HRS § 853–4(7) "appears to be clear and unambiguous[.]" *Id.* at 387–88, 605 P.2d at 498. However, reading the statutory language "in the context of the entire statute and construed in a manner consistent with the purposes of the statutes[,]" this court held that HRS § 853–4(7) was ambiguous "when read in context of subsections (6) and (8) and the purposes of Chapter 853." *Id.* at 388, 605 P.2d at 498. This court opined that "[i]f, as argued by the State, we were to

---

5. HRS § 853–4(6) to (8) provides:
   This chapter shall not apply when:
   . . . .
   (6) The defendant has been convicted of any offense defined as a felony by the Hawaii Penal Code or has been convicted for any conduct which if perpetrated in this state would be punishable as a felony;

(7) The defendant is found to be a law violator or delinquent child for the commission of any offense defined as a felony by the Hawaii Penal Code or for any conduct which if perpetrated in this state would constitute a felony;
   (8) The defendant has a prior conviction for a felony committed in any state, federal, or foreign jurisdiction.

follow the language of subsection (7) literally, it would mean that every defendant with a juvenile record for offenses which would have been felonies if committed by an adult would be automatically disqualified from the benefits of [a] DAG plea[.]" *Id.* at 389, 605 P.2d at 498–99. In that regard, this court further opined, "it would simply make no difference if the defendant happens to have a juvenile record of a single offense incurred at age twelve, and he is before the court with an unblemished adult record as a 'one-time, accidental or situational offender.' " *Id.* at 389, 605 P.2d at 499. Accordingly, and notwithstanding the plain language of HRS § 853–4(7), this court limited application of HRS § 853–4(7) "to only those cases involving minors over whom the family courts had exclusive original jurisdiction under HRS § 571–11(1) but were waived from the family courts to the criminal courts to be tried as adults pursuant to HRS § 571–22." *Id.* For those defendants "with juvenile records who are not before the court on such waivers, and who are not disqualified by any of the other subsections," this court held that "the trial court is vested with discretionary authority to either deny or accept DAG pleas." *Id.*

Similarly, as discussed *supra*, I would hold that the plain language of HRS § 853–1(b), as it applies to HRS § 706–624(3), is ambiguous. Moreover, based on the legislative history of HRS § 853–1(b), Hawaii's legislature intended that our trial courts be given discretion to provide "certain defendants" with a "substantial benefit"; namely, should a defendant comply with the terms and conditions of his DAG plea, "the charges are dismissed without adjudication of guilt and the defendant is discharged and may apply for expungement." 2000 Senate Journal, at 1026. As enunciated by our legislature when it enacted HRS chapter 853 in 1976, a DAG plea may be granted by the trial court in its discretion for those "cases wherein the facts and circumstances clearly indicate that the defendants are one-time, situational or accidental offenders who will not engage in further criminal activity and do not pose a threat to the safety of the community." 1976 Senate Journal, at 1152. This is due to the legislature's observation that "[f]or these offenders, the humiliation and inconvenience of arrest and prosecution satisfy the need for

punishment; and a trial and conviction would serve no purpose other than to impair the offenders' educational, employment, and professional opportunities and ability to function as a responsible and productive member of the community." *Id.* In light of the foregoing, it seems unlikely that our legislature intended that a defendant, who has actual notice of the terms and conditions of his DAG plea, may violate those terms and conditions yet be shielded from the consequences arising therefrom. *See* HRS § 1–15(2) (1993) ("The reason and spirit of the law, and the cause which induced the legislature to enact it, may be considered to discover its true meaning."); *Kaufman*, 92 Hawai'i at 329, 991 P.2d at 839 (holding, based on public policy and the facts and circumstances of that case, that "[w]ithout tolling, a person subject to a deferral period pursuant to a DAG plea would effectively escape the sanction of revocation simply because his untolled deferral period had expired before the trial court ruled on the revocation."); *Gray*, 84 Hawai'i at 148, 931 P.2d at 590 ("[T]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality."); *id.* ("[W]e must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose." (Block format and citation omitted.)); *Sylva*, 61 Haw. at 389, 605 P.2d at 499 ("In order to give [HRS § 853–4(7) ] a fair and reasonable construction consistent with the purposes of Chapter 853, [HRS § 853–4(7) ] must be given a limited application.").

Accordingly, pursuant to the legislative history of HRS § 853–1(b) and in light of the foregoing discussion, I would hold that the ICA gravely erred when it held that HRS § 706–624(3) is incorporated by reference into Hawaii's DAG plea statutory framework through the plain language of HRS § 853–1(b).

**D. Federal Case Law Interpreting Similar Federal Statutes Uniformly Hold That Evidence Of Actual Notice Is Sufficient To Satisfy the Federal Statutes' Written Notice Requirement.**

Because I would conclude that HRS § 706–624(3) is not included as a "condition"

**40**

pursuant to HRS § 853–1(b), HRS chapter 853 is silent as to whether it requires any notice of a trial court's terms and conditions of a DAG plea. "In ruling on state law, this Court may look for guidance to federal case law interpreting similar provisions." *Crosby v. State Dep't of Budget & Fin.*, 76 Hawai'i 332, 339 n. 9, 876 P.2d 1300, 1307 n. 9 (1994).

As quoted above, section 3583(f) of Title 18 of the United States Code provides, in its entirety:

> **Written statement of conditions.** The court shall direct that the probation officer provide the defendant with a written statement that sets forth all the conditions to which the term of supervised release is subject, and that is sufficiently clear and specific to serve as a guide for the defendant's conduct and for such supervision as is required.

Additionally, section 3603(1) of Title 18 of the United States Code provides:

> A probation officer shall—
>
> (1) instruct a probationer or a person on supervised release, who is under his supervision, as to the conditions specified by the sentencing court, and provide him with a written statement clearly setting forth all such conditions[.]

As discussed *supra*, a federal court has held that "[i]t would be patently unfair to revoke a defendant's supervised release and send him back to prison for violating conditions of the release that he had no way of knowing existed." *Arbizu*, 431 F.3d at 471. At the same time, however, "Congress . . . did not decide that a defendant who does not receive the proper written notice should be immune from revocation of supervised release." *Id.*; *United States v. Ortega–Brito*, 311 F.3d 1136, 1138 (9th Cir.2002) ("[T]he statutes detail the obligations of the [federal] district court and the probation officer, [but] they are silent with respect to remedies for noncompliance."). Rather, "[t]he purpose behind the requirement that the court order a written statement of the conditions of supervised release be furnished to the defendant is to provide 'a guide for the defendant's conduct and for such supervision as is required.'" *United States v. Felix*, 994 F.2d 550, 551 (8th Cir.1993); *Arbizu*, 431 F.3d at

471 ("Congress decided that requiring the probation officer to provide the defendant with written notice of the conditions is the best way to ensure the defendant knows what is expected of him during the supervised release period."). Accordingly, "[b]ecause the ultimate goal" of the written notice requirement "is notice and guidance for the defendant," the federal courts "decline[d] to impose a rule that failure to order or to provide a written statement automatically results in the inability of the sentencing court to revoke supervised release based on a violation of one of the conditions." *Felix*, 994 F.2d at 551; *see Ortega–Brito*, 311 F.3d at 1138 (agreeing with the reasoning of *Felix*).

Instead, federal courts have held that actual notice is sufficient to satisfy the purpose of the federal statutes quoted above. *Felix*, 994 F.2d at 551; *see Arbizu*, 431 F.3d at 471 ("We conclude, therefore, that failure to provide written notice of the conditions of supervised release does not automatically invalidate a revocation of such release if the defendant received actual notice of the conditions imposed."); *United States v. Tapia–Marquez*, 361 F.3d 535, 538 (9th Cir.2004) (affirming its holding in *Ortega–Brito*); *Ortega–Brito*, 311 F.3d at 1138 ("[W]e must determine whether [the defendant] received actual notice of the conditions, the violations of which formed the basis for the revocation of his supervised release."); *United States v. Ramos–Santiago*, 925 F.2d 15, 17 (1st Cir. 1991) (holding that even though the defendant never received a "written statement of conditions," the "essentials of the notice required" by the federal statutes were met when the defendant and his counsel "received copies of the sentence, to which were attached, *inter alia*, the conditions of his supervised release.").

I believe that the foregoing reasoning is persuasive, insofar as it gives HRS § 853–1(b) "a fair and reasonable construction consistent with the purposes of Chapter 853[.]" *See Sylva*, 61 Haw. at 389, 605 P.2d at 499. Accordingly, because it would be "patently unfair" to set aside a defendant's DAG plea for violating conditions he never knew existed, I would hold that a trial court may set aside a defendant's DAG plea if the defen-

dant has actual notice of the terms and conditions thereof. *See Arbizu,* 431 F.3d at 471.

The issue presented therefore becomes whether the evidence is sufficient to support a finding that Shannon was given adequate actual notice of the conditions of his DAG plea. In the instant case, the record reflects that Shannon satisfied one of these conditions; namely, he paid the twenty-five dollar "CICF" fine on March 14, 2005. The record also reflects, and Shannon admits, that he requested that the trial court convert his outstanding forty-hours of community service work into a fine. In light of the foregoing, I would hold that the evidence is sufficient to show that Shannon had actual notice of the terms and conditions of his DAG plea.

**E. In My View, Shannon's Remaining Points Of Error On Appeal Are Without Merit.**

1. *In my view, HRS § 706–627(1) (1993) does not require that a written motion to set aside a DAG plea be filed to toll the deferral period.*

In his opening brief before the ICA, Shannon asserts that the plain language of HRS § 706–627(1) requires that the prosecution file a written motion to set aside Shannon's DAG plea in order to toll the deferral period. HRS § 706–627(1) provides, in its entirety:

(1) Upon the filing of a motion to revoke a probation or a motion to enlarge the conditions imposed thereby, the period of probation shall be tolled pending the hearing upon the motion and the decision of the court. The period of tolling shall be computed from the filing date of the motion through and including the filing date of the written decision of the court concerning the motion for purposes of computation of

the remaining period of probation, if any. In the event the court fails to file a written decision upon the motion, the period shall be computed by reference to the date the court makes a decision upon the motion in open court. During the period of tolling of the probation, the defendant shall remain subject to all terms and conditions of the probation except as otherwise provided by this chapter.

This court has long adhered to the following rule of statutory construction: "When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself." *White,* 110 Hawai'i at 83, 129 P.3d at 1111 (quoting *Gray,* 84 Hawai'i at 148, 931 P.2d at 590).

Contrary to Shannon's assertion, the plain language of HRS § 706–627(1) does not require the prosecution to file a written motion. Instead, the plain language of HRS § 706–627(1) requires only that the "decision of the court concerning the motion" be in writing. Because the plain language of HRS § 706–627(1) makes a distinction between "the filing date of the motion" and "the filing date of the *written* decision of the court," *id.* (emphasis added), I would hold that the legislature intended that, for purposes of tolling a deferral period, a motion to set aside a DAG plea may be made either orally or in writing. *See White,* 110 Hawai'i at 83, 129 P.3d at 1111.

In the instant case, Shannon's DAG plea was requested by oral motion and granted by the trial court on February 11, 2005. The proof of compliance hearing had been held on January 27, 2006. It was at this hearing that the prosecution made its oral motion to set aside Shannon's DAG plea.[6] For reasons not included in the record on appeal, the hearing

6. The District Court Rules of Civil Procedure ("DCRCP") Rule 7(b)(1) (2006) requires, as follows:
    (b) *Motions and other papers.*
    (1) An application to the court for an order shall be by motion which, *unless made during a hearing or trial,* shall be made in writing, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. The requirement of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

(Emphasis added.)
    Moreover, the Rules of the District Courts of the State of Hawai'i ("RDCSH") Rule 7(a) (2006) states, in pertinent part: "All motions, *except when made during a hearing or trial,* shall be in writing, shall state the grounds therefor, shall set forth the relief or order sought, and if involving a question of law shall be accompanied by a memorandum in support of the motion." (Emphasis added.)

was continued to a later date. In light of the foregoing discussion, I would hold that the prosecution's oral motion on January 27, 2006 effectively tolled the deferral period "pending the hearing upon the motion and the decision of the court." HRS § 706–627(1).

2. *In my view, Shannon's assertion that the trial court lacked statutory authority to impose, as a condition of his DAG plea, that he remain arrest free is disregarded pursuant to Hawai'i Rules of Appellate Procedure ("HRAP") Rule 28(b)(4) (2006).*

Shannon asserts that the trial court lacked statutory authority to impose, as a condition of his DAG plea, that he remain arrest free during the period of his deferral. Shannon's sole argument as to this point of error is that the plain language of HRS § 706–624(1)(a) does not authorize a trial court's imposition of the condition that Shannon remain arrest free. HRS § 706–624(1)(a) provides, in relevant part, that "[t]he court shall provide, as an explicit condition of a sentence of probation: ... (a) [t]hat the defendant not commit another federal or state crime...."

The prosecution contends that this point of error should be disregarded, inasmuch as Shannon failed to object to this condition. The prosecution further contends that the trial court had the authority to impose such a condition pursuant to HRS § 706–624(2)(q), which states that "[t]he court may provide ... that the defendant[ ] ... (q) [s]atisfy other reasonable conditions as the court may impose."

HRAP Rule 28(b)(4) requires that each point of error shall state:

(i) the alleged error committed by the court or agency; (ii) where in the record the alleged error occurred; and (iii) where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court or agency.

Shannon fails to satisfy the requirements of (ii) and (iii) in his opening brief, and does not assert that his substantial rights were adversely affected by the trial court's imposition of this condition. Moreover, even if the trial court erred in imposing this condition,

the error did not affect Shannon's substantial rights inasmuch as Shannon admitted to not satisfying the condition of completing forty-hours of community service work. *See* HRS § 853–3 ("Upon violation of a term or condition set by the court for a deferred acceptance of guilty plea ..., the court may enter an adjudication of guilt and proceed as otherwise provided."); *see also State v. Rivera*, 106 Hawai'i 146, 166, 102 P.3d 1044, 1064 (2004) ("HRS § 641–16 (1993) expressly states that '[n]o order, judgment, or sentence shall be reversed or modified unless the court is of the opinion that error was committed which injuriously affected the substantial rights of the appellant.'" (Emphasis, block format, and citation omitted.)). "Consistent with the harmless error doctrine, we have frequently stated that error must be examined in light of the entire proceedings and given effect to which the whole record shows it is entitled." *Rivera*, 106 Hawai'i at 165–66, 102 P.3d at 1063–64 (citation and quotation marks omitted).

Assuming, *arguendo*, that the trial court erred in imposing the condition of remaining arrest-free, the error is harmless in light of the circumstances of this case. *See Rivera*, 106 Hawai'i at 165–66, 102 P.3d at 1063–64. Accordingly, I would disregard this point of error. "Points not presented in accordance with this section will be disregarded, except that the appellate court, at its option, may notice a plain error not presented." HRAP Rule 28(b)(4).

3. *In my view, Shannon's assertion that the trial court violated his right to confrontation is without merit.*

Shannon asserts that the trial court violated his constitutional right to confrontation when it admitted the Adult Client Services report into evidence inasmuch as it constituted hearsay and he was not given an opportunity to cross-examine the probation officer that filled out the report. The prosecution contends that the trial court did not err when it admitted the report into evidence, and points out that the trial court took judicial notice "of the fact that [Shannon] has been charged with [a] crime subsequent ... to the date that he was sentenced...." The prose-

cution further contends that even if the trial court erred in admitting the report into evidence, the error did not affect Shannon's substantial rights inasmuch as Shannon admitted to not satisfying the condition of completing forty-hours of community service work.

As discussed above and notwithstanding whether the trial court erred in either taking judicial notice of his arrest or admitting the report as evidence of his arrest record, the error complained of by Shannon does not affect his substantial rights inasmuch as Shannon admitted to not satisfying the condition of completing forty-hours of community service work. *See* HRS § 853–3; *see also Rivera*, 106 Hawai'i at 165–66, 102 P.3d at 1063–64. Accordingly, I do not believe that this court needs to express an opinion on this issue.

4. *In my view, Shannon's assertion that the trial court abused its discretion when it refused to convert his forty hours of community service work into a fine is deemed waived pursuant to HRAP Rule 28(b)(7).*

Shannon asserts that because "the usual practice of the trial court is to permit a probationer the opportunity to convert his or her community service [work] into a fine[,]" the trial court abused its discretion when it denied Shannon's request for the court to do the same for him. However, Shannon fails to include "citations to the authorities, statutes and parts of the record relied on" to support his assertion that this is a "usual practice of the trial court...." HRAP Rule 28(b)(7). Accordingly, I would deem Shannon's point of error as waived. *See id.* ("Points not argued may be deemed waived.").

5. *In my view, the trial court did not abuse its discretion when it refused to grant Shannon's motion for continuance.*

Shannon asserts that the trial court abused its discretion when it refused to grant his motion to continue the April 6, 2006 hearing so that he could have more time to obtain a transcript of his change-of-plea hearing. Shannon contends that this transcript would have clarified whether additional grounds exist for his DAG plea to be withdrawn. He also contends that his request for a continuance was reasonable because he was retained as counsel shortly before the April 6, 2006 hearing.

The trial court ruled on Shannon's motion for a continuance, as follows:

THE COURT: ... I'm going to deny the ... motion.... It's been a year since defendant was ... sentenced. And ... there's been more than adequate time for this motion to have been made previously.

And I'll also note that the general practice of the [c]ourts is that subsequent to ... the imposition of sentence, the courts are reluctant to grant withdrawal of plea. So I'm going to deny the motion at this time without prejudice to you to raise that later.

[SHANNON'S COUNSEL]: Well, ... is the [c]ourt considering that I just got on the case?

THE COURT: Yes. And I don't think that this is a motion of such magnitude that really requires that ... it be continued for a hearing at this time.

"We review a trial court's decision to grant or deny a motion to continue for an abuse of discretion." *Onaka v. Onaka*, 112 Hawai'i 374, 378, 146 P.3d 89, 93 (2006). "[A]n abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Klie*, 116 Hawai'i at 522, 174 P.3d at 361.

Even though Shannon's present counsel was retained close to the April 6, 2006 hearing, I cannot conclude that the trial court abused its discretion because (1) it took Shannon over a year to decide that he wanted to withdraw his guilty plea, and (2) Shannon acquiesced to the terms and conditions of his DAG plea when he satisfied the condition of payment of a fine on March 14, 2005. The conditions of his DAG plea were given on February 11, 2005, which is the same day that Shannon changed his plea to guilty and was granted a DAG plea by the trial court. Accordingly, Shannon had more than a

month to inform the court that he wanted to withdraw his guilty plea prior to his payment of the fine. In light of the foregoing, it cannot be said that the trial court "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of" Shannon when it refused to grant his motion for a continuance. *Klie,* 116 Hawai'i at 522, 174 P.3d at 361.

## II. CONCLUSION

Based upon the foregoing analysis, I would reverse the ICA's October 17, 2007 judgment on appeal.

